## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTAULIC COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-5077 |
| | : | |
| HITHERM, LLC, *et al.* | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

**SCHMEHL, J. /s/ JLS**                                                    **July 26, 2022**

Plaintiff Victaulic Company purportedly brings this action to protect their intellectual

property rights and to recover monies lent to defendants. Presently, all three defendants filed a

Motion to Dismiss. Defendant HiTHerm argues that Victaulic fails to adequately plead three of

its four causes of action, and the two individual defendants predominantly argue that the Court

lacks personal jurisdiction over them. Victaulic filed a Motion to Enjoin HiTHerm from pursuing

a later-filed litigation in a California Court and argues that said case consists of compulsory

counterclaims here. Below, the Court denies HiTHerm's Motion to Dismiss, dismisses one of the

two individual defendants for a lack of personal jurisdiction, and grants plaintiff's Motion to

Enjoin.

## I.    Factual Background

Plaintiff Victaulic develops and sells mechanical pipe joining technology, flow control,

and fire protection systems. (ECF #1, Complaint, at 1, 3.) In 2015, Victaulic "began investigating

insulation technology solutions for its pipe products and, as part of that process, contacted

[defendant] HiTHerm, an insulation materials production company, to initiate a collaborative relationship towards that goal." (*Id.* at 1.)

HiTHerm is owned by its co-defendants, Aniq Sufi and Roberto Difranchesco, and has four full-time employees. Sufi is the president, CEO, Chief Chemist, and part owner. Difranchesco is the Vice President of Sales and Marketing, and part owner. (*Id.* at 3-4.)

At the onset of Victualic's and HiTHerm's relationship, through Sufi and Difranchesco, HiTHerm "articulated an interest in selling the company's assets because it was on the verge of insolvency." (*Id.* at 2.) In the following years, the two entities collaborated to develop a new pipe insulation technology. They traveled to each other's facilities and facilities of each other's partners, they memorialized their relationship with several written agreements, and Victaulic lent a substantial sum of money to HiTHerm so HiTHerm could pay off third-party creditors.

A Master Joint Development Agreement and Statement of Work governed the parties' joint insulation technology efforts. Those agreements set forth who may sell and distribute the products, how the relationship may be terminated, and much more. The parties also entered into a Non-Binding Letter of Intent for Joint Venture, which predominantly set forth the terms and intentions of Victaulic to acquire HiTHerm. Further, a Demand Note and Guaranty of $35,000 was also agreed upon. Lastly and importantly to the pending Motions, after HiTHerm informed Victaulic of their various debts, Victaulic provided HiTHerm with $1,573,352.05 in funding to pay off HiTHerm's "past due invoice[s]," "settle[] debt[s]," "raw materials," and other similar circumstances over multiple years. (*Id.* at 8-9.)

During the course of their dealings, Victualic performed due diligence on HiTHerm and discovered significant accounting, tax, and safety issues. (*Id.* at 9-10.) Victaulic alleges that it discovered and informed HiTHerm of numerous safety issues at HiTHerm's California facility,

improper personal expenses by Sufi and Difranchesco from the money Victaulic lent to

HiTHerm, and a history of HiTHerm concealing losses in tax records. Still, "those []issues

remain largely unaddressed to this day." (*Id.* at 11.) After failing to compromise, the parties

ceased all dealings including the buyout, and this litigation ensued shortly thereafter.

Victaulic's alleged harm against the defendants is three-fold. First, Victaulic claims that

the 'jointly-developed' intellectual property is owned by Victaulic. Second, defendants

improperly gained knowledge of Victaulic's intellectual property and trade secrets. Third and

last, defendants misappropriated substantial funds that Victaulic lent them to pay off creditors.

More specifically, defendants Sufi and Difranchesco used some of the loans for personal

expenses such as groceries, auto purchases, and clothing. For this harm, Victaulic's brings four

causes of action: (1) Declaratory Relief; (2) Unjust Enrichment & Restitution; (3) Money Had

and Received; and (4) Accounting.

Presently, defendants Sufi and Difranchesco contest whether this Court has personal

jurisdiction over them. Generally, both defendants are the principals of HiTHerm, a California

entity, and they personally engaged in substantial business dealings with Victaulic, a

Pennsylvania company. Sufi put forth in an affidavit before this Court that: "I have been to

Hennecke's Pittsburgh facility on numerous occasions as a result of my involvement in the

Polyurethane industry over the past 52 years. This includes many visits before I was put in touch

with Victaulic." On top of this, after he was put in touch with Victaulic, he made numerous visits

to the Commonwealth of Pennsylvania to visit Victaulic's facilities and Victaulic's partners'

facilities, also in Pennsylvania. On the other hand, Difranchesco's only contacts with

Pennsylvania are the companies' general dealings with each other, and he made "regular" phone

calls and emails to Victaulic during their relationship.

Before this Court are four motions. HiTHerm's Partial Motion to Dismiss counts two to four on the merits. Sufi's and Difrancheso's Motions to Dismiss that are predominantly for a lack of personal jurisdiction. Fourth and last, Victaulic's Motion to Enjoin HiTHerm of maintaining a separate lawsuit in a California court. As to the Motion to Enjoin, HiTHerm told this Court on May 19, 2022, that it was "in the process of filing a motion to transfer the California Case to this Court, rendering the instant motion moot." To this Court's knowledge, no such transfer or dismissal and refiling to this Court has occurred.

## II.   <u>Analysis</u>

### 1.   <u>Personal Jurisdiction to the Individual Defendants.</u>

Rule 4(e) of the Federal Rules of Civil Procedure grants District Courts personal jurisdiction over non-resident defendants to the extent permitted by the law of the state in which the District Court sits. *See* Fed. R. Civ. P. 4. In Pennsylvania, the applicable long-arm statute authorizes personal jurisdiction over non-resident defendants to be exercised to the "fullest extent allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b). Personal jurisdiction can be either general or specific. General jurisdiction is when a defendant is "essentially at home" in the Court's jurisdiction. *Ford Motor Co. v. Montana Eighth Juicial District Court*, 141 S.Ct. 1017, 1024 (2021).

Specific jurisdiction has two parts. First, the defendant must have 'purposefully availed' themselves to the jurisdiction by having "minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (citing *Ford Motor*, 141 S.Ct. at 1024-25). Second, "the contacts must give rise to—or relate to—plaintiff's claims. *Id.* "A strong relationship among the defendant, the forum, and the litigation" satisfies this second prong. *Id.* at 208 (citation omitted).

Here, Difranchesco has no such minimum contacts. The only contacts that Difranchesco has with the Commonwealth of Pennsylvania is the fact that the California company that he partly owns, HiTHerm, entered into a business relationship with a Pennsylvania company, Victaulic. In doing so, Difranchesco sent "regular" emails and phone calls to people at Victaulic. But all of this was done in Difranchesco's official capacity as HiTHerm's Vice President and part owner. Further it is not alleged that he has ever been to Pennsylvania for leisure or for business. Accordingly, these contacts are insufficient for the Court to have personal jurisdiction over Difranchesco and he is dismissed from this case.

Conversely, this Court has personal jurisdiction over Sufi. Like Difranchesco, Sufi is a part owner of HiTHerm who engaged extensively with Victaulic, a Pennsylvania company. Unlike Difranchesco, Sufi visited HiTHerm's Pennsylvania place of business on multiple occasions, and visited Victaulic's partners' places of business, also in Pennsylvania. Further, Sufi's own affidavit before this Court is dispositive on the issue he attested that: "I have been to Hennecke's Pittsburgh facility on numerous occasions as a result of my involvement in the Polyurethane industry over the past 52 years. This includes many visits before I was put in touch with Victaulic." Thus, Sufi admits to such minimum contacts, has purposefully availed himself to the Commonwealth of Pennsylvania, and these contacts relate to Victaulic's claims which allege that Sufi took loans meant for HiTHerm, and he, along with Difranchesco, used the loans for personal expenses. The Court has personal jurisdiction over Sufi.

2.  <u>HiTHerm's Partial Motion to Dismiss is Denied.</u>[1]

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts

HiTHerm moves to dismiss three of Victaulic's four causes of action. First, HiTHerm argues that the Unjust Enrichment & Restitution count should be dismissed because such claim cannot exist when a written agreement governs a business relationship, and HiTHerm simply accepted payment pursuant to agreements and therefore they did nothing wrong.

A claim for Unjust Enrichment has three elements: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Am. Osteopathic Ass'n v. AM. Bd. of Internal Med.*, 555 F.Supp.3d 142, 152 (E.D. Pa. 2021) (citation omitted). Victaulic responds that it adequately pled these elements: "Victaulic alleges and explains how (1) it advanced more than $1.5 million to HiTHerm (a benefit) to pay specific debts and expenses in order to keep HiTHerm alive . . . (2) Defendants misappropriated those funds; (3) HiTHerm irretrievably frustrated the prospective acquisition when it refused to agree to basic representations and warranties; and (4) Defendants retain the advances." (ECF #46, Victaulic's Opposition, at 18, (citing Complaint at ¶ 33, 47, 56-58, 66-71).)

HiTHerm generally argues that it accepted Victaulic's payments "solely based on Victaulic's representation that it was going to purchase HiTHerm" and "there was never a refusal

---

that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

      The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

In our analysis of a motion to dismiss, the Court of Appeals allows us to also consider documents "attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

of consideration on the part of HiTHerm, and thus HiTHerm did not receive any benefit wrongfully . . . ." (ECF #44, HiTHerm's Motion to Dismiss, at 3-4.) Very simply, HiTHerm's argument wholly misses the pleading that Victaulic provided HiTHerm with $1.5 million and defendants misappropriated those funds by using it on personal expenses.

HiTHerm specifically argues that Victaulic failed to "quantify the benefit" of the "alleged exposure, if any." (*Id.* at 4 (citing *Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, 417 F.Supp.3d 531, 565 (E.D. Pa. 2019).) Again, HiTHerm ignores Victaulic's pleading that it lent $1.5 million dollars so HiTHerm could pay its creditors. This sum quantifies the benefit, it was not governed by a written agreement, and therefore, HiTHerm's arguments against the Unjust Enrichment count are without merit.

Second, HiTHERM argues that the Money Had and Received count should be dismissed because Victaulic failed to plead that the money was given by mistake or compulsion. A claim for Money Had and Received is for when a plaintiff "could recover money paid to the defendant, the money usually being recoverable because (1) the money had been paid by mistake or under compulsion, or (2) the consideration was insufficient." *Takeda Pharms. USA, Inc. v. Spireas*, 2017 4401988, at *19 (E.D. Pa. Oct. 3, 2017) (citations omitted). HiTHerm fails to argue anything against Victaulic's claim that this count is premised on insufficient consideration. HiTHerm also claims that the voluntary payment doctrine supports dismissal of the claim. However, as acknowledged by HiTHerm in their own submissions, the voluntary payment doctrine does not apply when a party commits fraud; such as paying an entity for the purpose of paying their creditors but the entity's principals instead used the funding for personal expenses. HiTHerm's arguments are without merit.

Third and last, HiTHERM and Sufi argue that the Accounting count should be dismissed because it is premised entirely on the unjust enrichment claim, and Accounting is "not a valid claim; it is a remedy." (ECF #44, Victaulic's Motion, at 7 (citing *McWreath v. Range Res.— Appalachia, LLC*, 81 F.Supp.3d 448, 467-68 (W.D. Pa. 2015).) First, the Court has already upheld Victaulic's unjust enrichment claim. Second, the defendants only cite to Western District of Pennsylvania cases, whereas within the Eastern District of Pennsylvania cases have held the opposite: "Accounting has been recognized in this District as both an equitable and legal remedy." *Mattern & Assoc., LLC v. Latham & Watkins LLP*, 2014 WL 4804068, at \*5 (E.D. Pa. Sep. 26, 2014) (citation omitted). Victaulic pleads for an equitable accounting: "an accounting of records as deemed equitable at the time of trial…." (ECF #1, Complaint, at 18-19.)

"An equitable accounting is only appropriate when a fiduciary relationship exists between the parties, the plaintiff has alleged fraud or misrepresentation, the accounts are mutual and complicated, or the plaintiff does not possess an adequate legal remedy." *Mattern*, 2014 WL 4804068, at \*5. For all the previously stated reasons, Victaulic has adequately alleged this cause of action given the loaned monies and the alleged misappropriation thereof. As such, the equitable accounting claim is a legal remedy that remains in this case.

3.  Victaulic's Motion to Enjoin.

Victaulic moves to enjoin HiTHerm from pursuing a separate later-filed litigation in a California court. Victaulic argues that the merits of that case are compulsory counterclaims to this suit. In response, HiTHerm informed this Court on May 19, 2022, that it is "in the process of filing a motion to transfer the California Case to this Court, rendering the instant motion moot." To date, no such transfer has occurred. Since then, the Court has held multiple conferences with the parties where the Court told HiTHerm to either transfer the case, dismiss the case and refile it

8

here or file counterclaims, or work out a stipulation of dismissal with Victualic and then refile or

file counterclaims here. Two months have now passed, and HiTherm failed to do any of this.

Accordingly, the Court Grants Victaulic's Motion to Enjoin the later-filed California action.

Defendants are hereby restrained and enjoined from proceeding with the litigation in the

California court, and in any other case that may include the parties and matters at issue herein.

### III.    Conclusion

For the reasons stated above, defendant Difranchesco's Motion to Dismiss is Granted and

he is dismissed from this case for a lack of personal jurisdiction. Defendant Sufi and HiTHerm's

Motions to Dismiss are Denied. Victaulic's Motion to Enjoin is Granted. An accompanying

Order follows.