**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VICTAULIC COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-5077 |
| | : | |
| HiTherm, LLC *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**SCHMEHL, J. /s/ JLS**                                   **March 28, 2024**

This case arises from a product development agreement and potential acquisition between parties whose relationship eventually soured, leading to disputes about the ownership of intellectual property, funds advanced to Defendants, and Plaintiff's obligation to purchase Defendants' assets, among other issues.   In the course of developing the record, the parties experienced multiple discovery disputes, ultimately leading to the Motion for Sanctions (ECF No. 95) now before this Court.  For the following reasons, the Motion is granted in part and denied in part.

## I.   BACKGROUND

Several of claims brought by Plaintiff Victaulic Company ("Victaulic") focus on the use (or misuse) of its funds by Defendants HiTHERM, LLC ("HiTHERM") and one of its owners, Defendant Aniq Sufi.  To better ascertain the accounting and use of these funds, Victaulic sought to depose Eduardo Casals, a HiTHERM employee who handled the company's bookkeeping.  As discussed below, Defendants aborted the deposition of Mr. Casals at the last minute, and it ultimately never took place.  Victaulic also sought to depose Carl Duarte as a Rule 30(b)(6)

witness, as Mr. Duarte was an outside accountant who prepared HiTHERM's taxes.  Although the parties successfully convened this deposition, Victaulic argues that Mr. Duarte was unprepared to discuss any of the noticed issues in a substantive manner.  Finally, Victaulic points to certain document requests that Defendants failed to satisfy, despite that deposition testimony indicates the existence of such responsive documents.

### A.     The Attempted Deposition of Mr. Casals

Victaulic noticed the deposition of Mr. Casals on June 14, 2022, and stated its understanding that Mr. Casals was currently an employee of HiTHERM and was represented by defense counsel.  (Decl. of Aryeh L. Kaplan in Supp. of Victaulic Co.'s Mot. for Sanctions ("Kaplan Decl.") Ex. 1, ECF No. 95-3.)  Approximately one month later, having received no response, Victaulic attempted to confirm Defendants' receipt of the deposition notice.  (*Id.* Ex. 2, ECF No. 95-4.)  Defendants' continued non-responsiveness was discussed at a telephonic status conference with this Court on June 29.  Following this call, the parties conferred about deposition scheduling and agreed to conduct several of them, including Mr. Casals's, during the week of August 22.  (*Id.* ¶ 9, ECF No. 95-2.)  During these discussions, counsel for Defendants apparently confirmed that the firm also represented Mr. Casals.  (*Id.*)  Because counsel for Victaulic had scheduling conflicts during the week of August 22, counsel sought to find another date that worked for Defendants; after receiving no response from Defendants to Victaulic's repeated overtures, Victaulic requested assistance from the Court.  (*Id.* Exs. 6–8, ECF Nos. 95-8 to -10.)  Counsel for Victaulic ultimately adjusted their own schedules to accommodate counsel for Defendants' request to conduct depositions during the week of August 22.  (*Id.* ¶ 13.)  The Court approved a joint stipulation setting forth the agreed-to deposition schedule.  (Joint Stip. and Order regarding Dep. Schedule, ECF No. 88.)

Victaulic served an amended deposition notice on August 2 that included Mr. Casals's deposition date (August 23) and noted that the location of the scheduled depositions would be Los Angeles, where counsel for both parties maintain offices. (*Id.* Ex. 9, ECF No. 95-11.) Defendants eventually confirmed that "our witnesses will be produced for deposition on the agreed upon dates." (*Id.* Ex. 10, ECF No. 95-12.) Late in the evening on August 21, however, Defendants informed Victaulic that Mr. Casals was no longer "agreeing to appear" for his August 23 deposition and raised, for the first time, the claim that Mr. Casals resided in Argentina and was no longer a HiTHERM employee. (*Id.*) After taking the deposition of Mr. Duarte on August 24, defense counsel informed Victaulic that Mr. Casals was once again willing to be deposed, but only by remote appearance and with the assistance of an interpreter. (*Id.*) In Victaulic's view, the circumstances of Mr. Casals's changes of heart are suspect. Victaulic argues that after Mr. Duarte provided damaging testimony in his deposition, counsel for Defendants pressed Mr. Casals to again agree to be deposed so that Mr. Casals could attempt to rehabilitate some of Mr. Duarte's testimony, which is discussed below.

### B.     The Rule 36(b)(6) Deposition of Mr. Duarte

In March 2022, Victaulic noticed the deposition of a designated representative of Mr. Duarte's accounting practice. (Kaplan Decl. Ex. 17, ECF No. 95-19.) Defendants moved to quash the deposition subpoena on various grounds; the Court ultimately granted that motion but ordered the parties to meet and confer as to the topics of this deposition. (Order, ECF No. 72.) The Court further ordered that if the parties could not agree on topics or claims of privilege, the parties should petition the Court anew. (*Id.*) Following this Order, Defendants failed to engage Victaulic on these issues, and the Court again addressed it with the parties at the June 29 telephonic status conference referenced above. Defendants eventually provided objections on July 20, to which Victaulic agreed. (Kaplan Decl. Ex. 18, ECF No. 95-20.) Defendants also provided an untimely

document production related to the deposition that consisted of a 23-page balance sheet for HiTHERM from 2014, a year not particularly important to this litigation.

At Mr. Duarte's deposition, he testified frankly that he had not prepared for all of the noticed topics.  Apparently because one exhibit referenced a 2014 letter he had written, Mr. Duarte reviewed his notes and tax return from only that year.  (Dep. of Carl F. Duarte at 26:24–27:10, ECF No. 97-2.)  This misunderstanding may represent a benign mistake by Mr. Duarte; the Court notes, however, that it was not just the responsibility of Mr. Duarte, a non-lawyer, to adequately prepare for his deposition, but also the responsibility of his counsel—*i.e.*, counsel for Defendants. In any event, Mr. Duarte did nothing more to prepare for the *other* noticed topics, and he acknowledged that he was "negligent" and "didn't spend enough time going through everything." (*Id.* at 107:7–10.)

###     C.      The Requests to Produce Certain Documents

As a final grounds for sanctions, Victaulic has identified certain document requests for which, in Victaulic's view, Defendants provided deficient productions.  In particular, Victaulic sought (1) documents relating to HiTHERM's repayment of its debs using funds advanced by Victaulic, (2) business emails from a HiTHERM executive, and (3) documents concerning formulations and testing of HiTHERM's proprietary foam product.  Victaulic believes productions on these subjects to be deficient due to the limited number of documents produced and deposition testimony indicating the existence of other responsive documents.  Defendants explain that, in compliance with the language of the relevant document requests, they have produced documents related to the expense of funds advanced by Victaulic.  They likewise state that the HiTHERM executive did not use personal email addresses for work, explaining the limited number of responsive documents from such accounts.  Defendants also note that documents regarding HiTHERM's proprietary information are governed by the Protective Order filed in this case (ECF

No. 54), which requires on-site inspection of trade secrets.  In response, Victaulic argues that its request concerning the use of funds to repay debts also included communications related thereto, not just documents.  Victaulic also argues that even if a responsive document were covered by the Protective Order, Defendants had an obligation to alert Victaulic, in a timely manner, to the existence of such protected information so that Victaulic could arrange for on-site inspection.

## II.   ANALYSIS

### A.   Whether the Court Should Impose Sanctions

As relevant to the present Motion, the Federal Rules of Civil Procedure empower this Court to grant sanctions against a party for failure to comply with a discovery order and for failure to attend a deposition.  Fed. R. Civ. P. 37(b), (d).  The former of these two subsections provides that where a party "fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders," including "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action" and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii).  The latter subsection provides that if "a party's . . . managing agent" or "a person designated under Rule 30(b)(6) . . . fails, after being served with proper notice, to appear for that person's deposition," a court may impose the same sanctions as above and "must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(d)(1)(A)(i), (d)(3).  Finally, although "[t]he decision to impose sanctions for discovery violations, as well as any determination as to what sanctions are appropriate, are matters generally entrusted to the discretion of the district court," *Barbee v. Se. Pa. Transp. Auth.*, 323 F. App'x 159, 162 (3d Cir. 2009) (citing *Bowers v. Nat'l Collegiate Athletic*

*Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007)), this Court must nonetheless craft sanctions that are "tailored to address the harm identified," *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994).

With these principles in mind, the Court finds that Victaulic is entitled to relief pursuant to Rule 37 as to the attempted deposition of Mr. Casals and the inadequate deposition of Mr. Duarte. For both witnesses, this Court approved a stipulation setting forth their deposition dates after much dispute by the parties, and Defendants failed to heed that order. (Joint Stip. and Order regarding Dep. Schedule, ECF No. 88.) The Court also finds that Mr. Casals was a "managing agent" whose appearance was mandated by Rule 37(d)(1)(A)(i). Defendants do not dispute this characterization and instead argue that at the time of the scheduled deposition, Mr. Casals was neither a U.S. resident nor an employee of HiTHERM, and counsel for Defendants therefore had no ability to compel him to appear. It was counsel for Defendants, however, that represented to the Court and Victaulic that they were counsel for Mr. Casals and that he would be available for a deposition on August 23, 2022. If Mr. Casals had concerns about travel, translation, or any other circumstance that would prevent him from appearing for his Court-ordered deposition, counsel for Defendants should have informed the Court and Victaulic far more than approximately one day before the scheduled date. *See In re Keystone Foods, Inc.*, 134 B.R. 828, 830 (Bankr. W.D. Pa. 1991) ("[Sanctioned counsel] could have avoided the responsibility simply by responding to [opposing counsel's] letter and telling [opposing counsel] to serve a subpoena on [the non-appearing witness], or advising simply that [such witness] is not under [sanctioned counsel's] control. Instead, [sanctioned counsel] undertook the responsibility of producing [the non-appearing witness] and must bear the responsibility for his failure to appear.").

At best, defense counsel's inability to produce Mr. Casals represents a failure to discuss the witness's circumstances and needs until the very last minute, depriving Victaulic of key

testimony and imposing on it needless costs.  At worst, it represents gamesmanship that sought to shield Mr. Casals from being deposed until it became more favorable than not.  In either case, it was misconduct for defense counsel to spring Mr. Casals's non-appearance on Victaulic at the last minute and after significant negotiation between the parties and the Court as to the deposition schedule for the week of August 22, 2022.  Defense counsel's subsequent offer to produce Mr. Casals at another date does not remedy the expense incurred by Victaulic or the possibility that Mr. Casals will now testify in a manner intended to address deficiencies in other witnesses' testimony.  For these reasons, Defendants and their counsel did not comply with a Court order and failed to produce a managing agent of HiTHERM, and the Court will impose sanctions.

As to the inadequate deposition of Mr. Duarte, the Third Circuit has endorsed the view that "[p]roducing an unprepared witness is tantamount to a failure to appear."  *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) (quoting *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C.), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996)).  The Court finds that Mr. Daurte's self-admittedly "negligent" preparation was so insufficient as to constitute a failure to appear.  Although his conduct was not nearly as inappropriate as the witness in *Black Horse Lane*, courts have imposed sanctions for a lack of preparation in circumstances similar to those here.  *See, e.g.*, *Constellation NewEnergy, Inc. v. Powerweb, Inc.*, 2004 WL 1784373, at *4 (E.D. Pa. Aug. 10, 2004) (sanctioning Rule 30(b)(6) witness who could not identify lost contracts that formed the basis of the plaintiff's tortious interference claim).  The Court likewise rejects Defendants' position at oral argument that Mr. Duarte was not prepared to discuss certain tax returns because the original deposition subpoena had been quashed.  In addition to granting Defendants' motion, the Court ordered the parties to agree to appropriate topics—which they eventually did.  Counsel for Defendants, having successfully narrowed the relevant topics, had a responsibility to prepare Mr. Duarte to testify to those subjects.  Because Mr. Duarte effectively

failed to appear at his deposition, Defendants violated both the Court order setting forth deposition dates and Rule 37(d)'s requirement that a person designated under Rule 30(b)(6) must appear for his noticed deposition.

Turning to the issue of document production, the Court finds that although Defendants have in certain instances failed to produce timely and fulsome discovery, their conduct does not warrant the imposition of sanctions at this time.  Notwithstanding that the issue of the HiTHERM executive's personal email use appears to be resolved, Defendants are admonished to comport with the scope of discovery requests relating to HiTHERM's use of Victaulic's advances to pay its debts.  Defendants must also proactively notify Victaulic when responsive documents exist but must be reviewed pursuant to the Protective Order.  The parties may petition the Court further concerning production issues that will affect the forthcoming trial in this case, including whether discovery needs to be reopened on certain issues.

### B.  Nature of the Sanctions Imposed

Rule 37(d)(3) mandates that the Court must impose upon Defendants and their counsel "the reasonable expenses, including attorney's fees, caused by the failure" of Mr. Casals and Mr. Duarte to appear for their depositions, and the Court will do so.  The Court also finds it appropriate for Defendants and their counsel to pay such reasonable expenses and fees associated with filing the instant Motion and participating in the portion of the January 23, 2024, oral argument that pertained thereto.  Victaulic further requests that the Court (1) grant an adverse inference as to the aborted testimony of Mr. Casals and (2) preclude Defendants from contradicting the limited testimony of Mr. Duarte.

In considering an adverse inference sanction under Rule 37, the Court must assess "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial

unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).  As set forth above, the Court finds counsel for Defendants at fault for failing to ensure the appearance of a witness they represent and, further, failing to timely notify Victaulic and the Court of such witness's refusal to appear.  Victaulic has suffered prejudice by not being able to depose a key witness that could have spoken to Defendants' handling of funds advanced by Victaulic.  This deficiency also prevented Victaulic from moving for summary judgment on its claims that rely on this information, such as those for unjust enrichment and money had and received.  Finally, a sanction lesser than an adverse inference would fail to remedy the prejudice to Victaulic, as deposing Mr. Casals now would provide him the opportunity to review the testimony of other HiTHERM witnesses, comport his understanding to their own, and potentially attempt to rehabilitate any perceived weaknesses in their testimony.  Accordingly, the Court will provide an adverse inference instruction on the topics noticed for Mr. Casals's deposition.  *See* Fed. R. Civ. P. 37(b)(2)(A)(i).  For the same reasons, Mr. Casals will not be permitted to testify at trial as to any of these topics.

These same factors support precluding Defendants from introducing evidence or otherwise taking a position contrary to the testimony of Mr. Duarte.  *See* Fed. R. Civ. P. 37(b)(2)(A)(ii).  Counsel for Defendants were responsible for preparing Mr. Duarte for more than just the 2014 tax return, and Victaulic was prejudiced by the consequently limited scope of his testimony.  Because even a detailed review of HiTHERM's tax returns would likely not have provided as extensive of an insight into the company's use of Victaulic's funds as the testimony of Mr. Casals would have, however, this lesser sanction is more appropriate than applying an adverse inference to the subjects noticed for Mr. Duarte.

Finally, as set forth above, the Court will not impose sanctions for document production at this time.  The foregoing sanctions adequately address defense counsel's conduct and the prejudice to Victaulic.  As the parties finalize their preparations for trial, other remedial measures as to any remaining discovery issues remain available to them.

**III.     CONCLUSION**

For the foregoing reasons, Victaulic's Motion is granted in part and denied in part.  A corresponding order accompanies this memorandum.