**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

VICTAULIC COMPANY,

    Plaintiff,

    v.

HITHERM, LLC, a California corporation;
and ANIQ SUFI, an individual;

    Defendants.

CIVIL ACTION NO.: 5:21-cv-05077-JLS

---

HITHERM, LLC, a California corporation,

    Defendant/Counter-Claimant,

    v.

VICTAULIC COMPANY, and JEFFREY
WEBSTER, an individual,

    Plaintiff/Counter-Defendants.

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF AND COUNTER-
DEFENDANT VICTAULIC'S MOTION FOR ATTORNEY'S FEES</u>**

## <u>TABLE OF CONTENTS</u>

Page

I.  PRELIMINARY STATEMENT ....................................................................... 1

II. RELEVANT BACKGROUND ......................................................................... 2

A.  Preparation for Mr. Casals' Deposition (Totaling 65.8 Hours and a Lodestar of $40,062.40) ...................................................................... 2

B.  Preparation for Mr. Duarte's Deposition (Totaling 36.5 Hours and a Lodestar of $23,244.80) ...................................................................... 4

C.  The Researching, Drafting, and Complete Briefing of Victaulic's Sanctions Motion and Reply in Support of Same and Preparation for the January 23, 2024 Hearing (Totaling 165.5 Hours and a Lodestar of $107,741.00) ....................................................................................... 5

D.  The Court's Order Regarding Payment of Attorney's Fees.................................. 7

III. ARGUMENT ................................................................................................... 7

A.  Victaulic is Entitled to Attorney's Fees and Costs of $174,272.35 Pursuant to the Court's Order ........................................................... 7

B.  The Amount of $170,741 in Attorney's Fees Requested is Reasonable.................. 8

1.  Counsel's Rates are Reasonable ............................................... 10

a.  The Hourly Rate of Aryeh L. Kaplan is Reasonable. ................... 14

b.  The Hourly Rate of Nina T. Martinez is Reasonable.................... 15

c.  The Hourly Rate of Dustin Chase-Woods is Reasonable. ............ 16

2.  The Hours Expended by Counsel are Reasonable ................................... 17

C.  The Costs of $3,531.35 Expended are Reasonable............................................... 20

IV. CONCLUSION................................................................................................ 21

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Arizona Premium Fin. Co. v. Keystone Surplus Lines*,
    2008 WL 11514962 (E.D. Pa. Jan. 11, 2008) ......................................................................8

*Bell v. United Princeton Properties, Inc.*,
    844 F.2d 713 (3d Cir. 1989) ..............................................................................................9

*Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*,
    228 F.3d 275 (3d Cir. 2000) ..............................................................................................8

*Blum v. Stenson*,
    465 U.S. 886 (1984) ..........................................................................................................9

*City of Riverside v. Rivera*,
    477 U.S. 561 (1986) ........................................................................................................16

*Pa. v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) ......................................................................................................8, 9

*Eksouzian v. Albanese*,
    No. CV 13-728 PSG, 2015 WL 12765585 (C.D. Cal. Oct. 23, 2015) ...............................12

*Hicks v. Toys 'R' Us-Delaware, Inc.*,
    No. CV13-1302-DSF JCGX, 2014 WL 4670896 (C.D. Cal. Sept. 2, 2014) .........................13

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
    426 F.3d 694 (3d Cir. 2005), *as amended* (Nov. 10, 2005) ..............................................8, 11

*Joan P.B. v. Khepera Charter Sch.*,
    420 F. Supp. 3d 347 (E.D. Pa. 2019) ............................................................................9, 10

*Kratzer v. Wegman's Restaurant, LLP*,
    2005 WL 2847320 (E.D. Pa. Oct. 27, 2005) ....................................................................19

*Maldonado v. Houston*,
    256 F.3d 181 (3d Cir. 2001) ...........................................................................................8, 9

*S.D. v. Manville Bd. of Educ.*,
    989 F. Supp. 649 (D.N.J. 1998) .......................................................................................13

*Marthers v. Gonzales*,
    No. 05-CV-03778, 2008 WL 3539961 (E.D. Pa. Aug. 13, 2008) .........................................19

ii

*Middlebrooks v. Teva Pharms. USA, Inc,*
    No. CV 17-412, 2019 WL 936645 (E.D. Pa. Feb. 26, 2019)....................................................11

*Minehan v. McDowell*,
    No. CV 21-5314, 2023 WL 199276 (E.D. Pa. Jan. 17, 2023) ...................................................12

*G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*,
    894 F. Supp. 2d 415 (S.D.N.Y. 2012).......................................................................................13

*John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit*,
    2003 WL 22006810 (E.D. Pa. Aug. 22, 2003) ...........................................................................9

*Pennsylvania Env't Def. Found. v. Canon-McMillan Sch. Dist.*,
    152 F.3d 228 (3d Cir. 1998)......................................................................................................10

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010)....................................................................................................................8

*Washington v. Philadelphia Cty. Ct. of Common Pleas*,
    89 F.3d 1031 (3d Cir. 1996)..................................................................................................8, 16

*Rush v. Scott Specialty Gases, Inc.*,
    934 F. Supp. 152 (E.D. Pa. 1996) ............................................................................................19

*Sabinsa Corp. v. HerbaKraft, Inc.*,
    No. 14-cv-04738, 2022 WL 17446485 (D.N.J. Dec. 6, 2022)..................................................12

*Shanea S. v. Sch. Dist. of Phila.*,
    2014 WL 2586940 (E.D. Pa. June 10, 2014) ...........................................................................16

*SPIRG v. AT & T Bell Laboratories*,
    842 F.2d 1436 (3d Cir. 1988)...................................................................................................13

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure
    Rule 6(a)(1)(C)............................................................................................................................7
    Rule 30(b)(6).........................................................................................................................5, 8
    Rule 37(d) ............................................................................................................................7, 8

Plaintiff /Counter-Defendant Victaulic Company ("Victaulic") submits this memorandum of law, together with the accompanying declaration of Aryeh L. Kaplan and the exhibits attached to same, in support of its Motion for Attorney's Fees pursuant to Your Honor's March 28, 2024 Opinion (Dkt. No. 163) ("Opinion") and Order (Dkt. No. 164) ("Order") granting in part Victaulic's Motion for Sanctions ("Sanctions Motion") (Dkt. Nos. 95 & 96) and ordering reasonable expenses, including attorney's fees, caused by the failure of Eduardo Casals ("Mr. Casals") and Carl Duarte ("Mr. Duarte") to appear for their depositions, such expenses and fees to include those incurred by Victaulic to litigate the Sanctions Motion and participate in the portion of the January 23, 2024 oral argument regarding same.[1]

## I.    PRELIMINARY STATEMENT

The Court has already determined that Defendants' actions were egregious and therefore, sanctions were warranted.  As such, the only relevant matter for the Court's consideration in this instant motion is question of amount due to Victaulic as a result of Defendants' sanctionable conduct, which is answered by Victaulic's lodestar based on the time spent in relation to the depositions and the Sanctions Motion.

Victaulic respectfully requests that this Court enter an Order requiring that Victaulic be awarded a total of $174,272.35 comprised of $40,062.40 in fees for the work its attorneys were required to perform in preparing for and attending the deposition of Mr. Casals, $23,244.80 in fees for the work its attorneys were required to perform related to the deposition of Mr. Duarte, and $107,433.80 in fees for the work its attorneys performed in connection with the Sanctions

---

[1] As might also be defined in the text, we use customary abbreviated terms in this brief, including "Defendants" to refer to Defendants/Counterclaimants HiTHERM, LLC ("HiTHERM") and Aniq Sufi ("Sufi") (collectively, "Defendants"), "Victaulic" to refer to Plaintiff/Counterclaim-Defendant Victaulic Company.

Motion and the oral argument regarding same, as well as Victaulic's costs of $3,531.35 in relation to these efforts.  Victaulic's request is reasonable based on the work and lodestar actually expended in response to Defendants' and their counsel's conduct egregious conduct.

## II.    RELEVANT BACKGROUND

### A.    Preparation for Mr. Casals' Deposition
###       (Totaling 65.8 Hours and a Lodestar of $40,062.40)

As chronicled in Victaulic's Sanctions Motion at Dkt. No. 95-1, 1-6; 12-15, and restated in the Court's Opinion at 1-4, Victaulic expended significant effort in procuring Mr. Casals' deposition.  Victaulic first noticed the deposition of Mr. Casals on June 14, 2022, to take place on July 15, 2022.  *See* Sanctions Motion at 1; Opinion at 2. After a series of attempts to confirm receipt of the notice of deposition and schedule same with HiTHERM's counsel, including Victaulic's elevating the matter to the Court on June 29, 2022 and again on July 20, 2022, the parties ultimately conferred regarding the scheduling of Mr. Casals' deposition (among other depositions) and pursuant to the parties' joint stipulation entered by the Court (Dkt. No. 88), Victaulic served an amended notice on August 2, 2022 for the deposition of Mr. Casals to take place on August 23, 2022 (to be followed by the deposition of Mr. Duarte on August 24, Mr. DiFranchesco on August 25, and Mr. Sufi on August 26). *Id.* at 2-4; Opinion at 2-3.

As soon as Victaulic's counsel was assured that the deposition of Mr. Casals would proceed on August 23, 2022, it began preparing for same. *See* Declaration of Aryeh L. Kaplan in Support of Victaulic's Motion for Attorney's Fees ("Kaplan Decl.") at ¶ 4.  In advance of Mr. Casals' deposition, Victaulic's counsel reviewed HiTHERM's production for all documents to or from Mr. Casals that related to Victaulic's unjust enrichment, money had and received, and accounting claims. *Id.* at ¶ 5.

Notably, on August 12, 2022, in response to Victaulic's August 5, 2022 outreach concerning HiTHERM's deficient production, HiTHERM made a very large and late document production, a little over a week before Mr. Casals' scheduled deposition.[2] *Id.* at ¶ 6. This caused Victaulic's counsel to devote extensive time and resources to such review in order to identify and analyze all documents relevant to Mr. Casals' deposition were in fact incorporated into the materials intended for use at Mr. Casals' deposition. *Id.* at ¶ 7; *see also* Ex. A to Kaplan Decl. ("Time Entries") (reflecting contemporaneous time entries for review of new production in relation to preparation for Mr. Casals' deposition). Mr. Casals was featured prominently in HiTHERM's document production because he was HiTHERM's sole in-house accountant and bookkeeper. Kaplan Decl. at ¶ 8. In fact, of HiTHERM's production of 5,582 documents, Mr. Casals was the sender or recipient of approximately 1,787 documents (spanning over 4,500 pages of correspondence). *Id.*

In addition to gathering and cataloguing the relevant documents for use as exhibits in Mr. Casals' deposition, in advance of Mr. Casals' deposition counsel drafted an extensive deposition outline, conducted research regarding Mr. Casals' background, investigated the local rules regarding deposition conduct, and coordinated the logistics around Mr. Casals' appearance. *Id.* at 9. After spending over two months attempting to procure Mr. Casals' deposition, nearly three weeks preparing for same, including the review of thousands of pages of documents and the preparation of deposition exhibits and an outline, Defendants willfully refused to have Mr. Casals appear approximately 24 hours before the deposition. *See* Sanctions Motion at 5-6.

---

[2] On or around June 29, 2022 HiTHERM produced 3,271 documents totaling 9,984 pages. On August 12, 2022, HiTHERM produced nearly 70% of its prior production, 2,310 documents totaling 8,082 pages. Kaplan Decl. at ¶ 6.

**B.    Preparation for Mr. Duarte's Deposition**
**(Totaling 36.5 Hours and a Lodestar of $23,244.80)**

As summarized by the Court in its Opinion at 3, in March 2022, Victaulic noticed the

deposition of a designated representative of Mr. Duarte's accounting practice.  Defendants

moved to quash the deposition subpoena on various grounds and the Court ultimately granted

that motion but ordered the parties to meet and confer as to the topics of this deposition.  Opinion

at 3.

After a series of efforts to confer regarding the topics of Mr. Duarte's deposition,[3] the

parties ultimately reached an agreement as to the topics for the deposition of Mr. Duarte.

Sanctions Motion at 12-13.  Thereafter, pursuant to the parties' agreed-upon schedule and joint

stipulation entered by the Court (Dkt. No. 88), Victaulic re-issued the revised subpoena and

document requests reflecting the amended topics and document requests on August 2, 2022.

Having finally solidified the date of Mr. Duarte's deposition for August 24, 2022, counsel

for Victaulic began analyzing documents in HiTHERM's production that touched on the topics

noticed for Mr. Duarte's deposition, drafted an extensive deposition outline, conducted research

regarding Mr. Duarte's background, investigated the local rules regarding deposition conduct,

and coordinated the logistics around Mr. Duarte's appearance.  Kaplan Decl. at ¶ 10; *see also* Ex.

A (Time Entries) to *id.* (contemporaneous time entries reflecting work performed in preparation

---

[3] As chronicled in Victaulic's Sanctions Motion, the efforts around obtaining Mr. Duarte's
deposition were extensive. *See* Sanctions Motion at 12-14.  Victaulic first served Mr. Duarte
with a subpoena on March 17, 2022, following briefing and arguments on Defendants' motion to
quash, the Court ordered on June 8, 2022 that the Parties meet and confer regarding the topics of
the deposition. *Id.* at 12; *see also* Dkt. No. 72.  Thereafter, Victaulic re-issued notice of the
subpoena and served Mr. Duarte on June 20, 2022.  *Id.* at 12.  Defendants' counsel failed to
respond to Victaulic's repeated efforts to confer regarding the topics of Mr. Duarte's deposition,
necessitating Victaulic to seek Court intervention on June 29, 2022 and again in July 20, 2022.
*Id.*

for Duarte deposition).  Mr. Duarte appeared at his deposition and was utterly unprepared by counsel thus depriving Victaulic of any meaningful deposition testimony.  Kaplan Decl. at ¶ 11; *see* Order at 7.

C.    **The Researching, Drafting, and Complete Briefing of Victaulic's Sanctions Motion and Reply in Support of Same and Preparation for the January 23, 2024 Hearing (Totaling 165.5 Hours and a Lodestar of $107,741.00)**

The issues around HiTHERM's discovery abuses reached a fever pitch and following the nonappearance of Mr. Casals, the effective nonappearance of Mr. Duarte, and the depositions of the principals, Aniq Sufi and Roberto DiFranchesco on the week of August 23, 2022, Victaulic determined that the circumstances warranted seeking sanctions.  Kaplan Decl. at ¶ 12. Given the impending close of fact discovery and the urgency of the request, Mr. Kaplan and Ms. Martinez involved Dustin Chase-Woods, another associate at Pillsbury (and to a lesser extent, a junior associate, John Steger), to draft the Sanctions Motion so that Ms. Martinez and Mr. Kaplan could continue to prepare for the imminent deposition of HiTHERM's Rule 30(b)(6) witness, as well as the defense of Victaulic's witnesses, and to attend to ongoing discovery issues.  *Id.*

Because of the gravity and implications of a request for sanctions, counsel conducted extensive research into the propriety of the motion, the relevant standard, and the jurisdictional precedent as part of the drafting process.  *Id.* at ¶ 13.  Thereafter, counsel expended significant efforts in order to gather the relevant communications with opposing counsel which would demonstrate Victaulic's ongoing efforts to resolve discovery issues and HiTHERM's persistent non-responsiveness and unwillingness to confer.  *Id.* at ¶ 14.  These communications informed the relevant background for the motion which counsel set forth in painstaking detail (*see* Sanctions Motion at 1-6, 12-15 & 17-18) and resulted in the identification of approximately 22 relevant communications for submission as exhibits.  *Id.*; *see* Dkt. Nos. 95-2-24.  Additionally,

5

Victaulic was also forced to obtain quick turnaround rough drafts of the deposition transcripts in order to extract the relevant statements to support its arguments in the Sanctions Motion.  Kaplan Decl. at ¶ 14; *See* Sanctions Motion at 14-15.

Moreover, in preparing its filing, counsel determined that raising certain issues called for attention to trade secret sensitivities and an analysis of Victaulic's ability to redact and file under seal. Kaplan Decl. at ¶ 15.  Counsel does not take such a filing lightly and thus, the motion was reviewed and further revised by Mr. Kaplan and Ms. Martinez in anticipation of its filing on September 12, 2022. *Id.*; *see* Dkt. Nos. 95 & 96.  HiTHERM filed a response in opposition on September 29, 2022 (Dkt. Nos. 104 & 105) for which Victaulic submitted a reply on October 6, 2022.  Dkt. No. 107.

On January 11, 2024, the Court ordered the parties to appear in Reading, Pennsylvania for oral argument on Victaulic's Sanctions Motion (as well as the parties' motions for summary judgment and Victaulic's motion to strike the declarations of Aniq Sufi).  Kaplan Decl. at ¶ 16; Dkt. No. 153.  In the period leading up to the hearing, counsel reacquainted itself with the arguments and issues raised in the Sanctions Motion, analyzed the relevant case law, outlined the ongoing and recent discovery abuses that have reinvigorated the significance of the issues raised in the Sanctions Motion, and considered the interplay of the issues raised in the Sanctions Motion with the parties' motions for summary judgment.  Kaplan Decl. at ¶ 17.  Because Mr. Chase-Woods had taken the lead in drafting the Sanctions Motion, he provided Mr. Kaplan and Ms. Martinez with support in preparing for the hearing on that topic, including the creation of the demonstrative presented at the hearing. *Id.*  Accordingly, Mr. Kaplan studied the materials prepared by Mr. Chase-Woods and Ms. Martinez in advance of the hearing, such preparation included reviewing and analyzing the filings and studying the case law cited by Victaulic. *Id.*

Mr. Kaplan argued Victaulic's Sanctions Motion on January 23, 2024 in person, which spanned approximately two hours. *Id.*

###### D. The Court's Order Regarding Payment of Attorney's Fees

Victaulic brings the instant motion for attorney's fees ("Motion for Attorney's Fees") pursuant to Your Honor's March 28, 2024 Opinion (Dkt. No. 163) and Order (Dkt. No. 164) granting in part Victaulic's Sanctions Motion (Dkt. Nos. 95 & 96) and ordering reasonable expenses, including attorney's fees, caused by the failure of Mr. Casals and Mr. Duarte to appear for their depositions, such expenses and fees to include those incurred by Victaulic to litigate the Sanctions Motion and participate in the portion of the January 23, 2024 oral argument regarding same. In its Opinion, the Court noted that HiTHERM's conduct with regards to Mr. Casals' nonappearance represented "[a]t best," "a failure to discuss the witness's circumstances and needs until the very last minute, depriving Victaulic of key testimony and imposing on it needless costs" and "[a]t worst," "gamesmanship that sought to Mr. Casals from being deposed until it became more favorable than not." Opinion at 6-7. Moreover, the Court held that "Mr. Daurte's self-admittedly 'negligent' preparation was so insufficient as to constitute a failure to appear." *Id.* at 7. The Court's accompanying Order directed Victaulic to submit a bill of costs and motion for attorney's fees thirty days of the Order or by April 27, 2024.

### III. <u>ARGUMENT</u>

#### A. Victaulic is Entitled to Attorney's Fees and Costs of $174,272.35 Pursuant to the Court's Order

As the Court held in its Opinion, "Rule 37(d)(3) mandates that the Court must impose upon Defendants and their counsel 'the reasonable expenses, including attorney's fees, caused by the failure' of Mr. Casals and Mr. Duarte to appear for their depositions[,]" as well as "such reasonable expenses and fees associated with filing the [Sanctions Motion] and participating in

the portion of the January 23, 2024, oral argument that pertained [to the Sanctions Motion]."

Opinion at 8.  This is because "when a witness is designated by a corporate party to speak on its

behalf pursuant to Rule 30(b)(6) [of the Federal Rules of Civil Procedure], producing an

unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)."

*Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) (citations

and internal quotations omitted).  Thus, having issued an Order explicitly granting reasonable

expenses and compelling Victaulic to submit a fees motion regarding same, the Court now need

only consider the reasonableness of the amount requested.

### B.    The Amount of $170,741 in Attorney's Fees Requested is Reasonable

The Supreme Court has held that the lodestar approach to calculating a reasonable

attorney fee, which was pioneered by the Third Circuit, carries a strong presumption of

reasonableness. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The lodestar is the

"product of an attorney's hourly rate and the number of hours spent." *Interfaith Cmty. Org. v.*

*Honeywell Int'l, Inc.*, 426 F.3d 694, 703, n.5 (3d Cir. 2005), *as amended* (Nov. 10, 2005)

("*Interfaith*"); *see also Arizona Premium Fin. Co. v. Keystone Surplus Lines*, 2008 WL

11514962, at *2 (E.D. Pa. Jan. 11, 2008) (citing *Pa. v. Del. Valley Citizens' Council for Clean*

*Air*, 478 U.S. 546, 564 (1986)).

Although the party seeking attorney's fees bears the burden of showing that its requested

hourly rates and the hours it claims are reasonable,[4] once "'the applicant for a fee has carried his

burden of showing that the claimed rates and number of hours are reasonable, the resulting

product is presumed to be the reasonable fee to which counsel is entitled.'" *Maldonado v.*

---

[4] *Interfaith*, 426 F.3d at 703 n.5; *see also Maldonado,* 256 F.3d at 184 (quoting *Washington v.*
*Philadelphia Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)).

*Houston*, 256 F.3d 181, 184 (3d Cir. 2001) (quoting *Pennsylvania v. Delaware Valley Citizens'*
*Council for Clean Air*, 478 U.S. 546, 564 (1986)).

 To demonstrate reasonableness, the moving party need only "submit evidence to support
his assertion as to the number of hours expended and the rate claimed." *John T. ex rel. Paul T. v.*
*Delaware Cty. Intermediate Unit*, 2003 WL 22006810, at *4 (E.D. Pa. Aug. 22, 2003) (internal
citation omitted). The "starting point" in determining the appropriate hourly rate is the
attorneys' usual billing rate. *Joan P.B. v. Khepera Charter Sch.*, 420 F. Supp. 3d 347, 353 (E.D.
Pa. 2019). Courts should then consider the 'prevailing market rates' in the relevant community
for attorneys. *Blum v. Stenson*, 465 U.S. at 895. Then, the Court evaluates the reasonableness of
the hours expended. Ultimately, the Court has "considerable" discretion in determining what is
reasonable. *Bell v. United Princeton Properties, Inc.*, 844 F.2d 713, 721 (3d Cir. 1989).
Ultimately, when an applicant for a fee has carried his burden of showing that the claimed rates
and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to
which counsel is entitled.'" *Maldonado*, 256 F.3d at 184 (quoting *Delaware Valley Citizens'*
*Council*, 478 U.S. at 564).

 As discussed herein the rates charged by counsel for Victaulic and paid by Victaulic are
reasonable because they are a significant discount from counsel's regular hourly rate, were
actually paid by Victaulic in the instant matter and in other litigation, and are supported by the
prevailing market rate in the relevant community. Moreover, the hours expended by counsel
were reasonable in light of the circumstances and supported by contemporaneous time records
and invoices.

### 1.    Counsel's Rates are Reasonable

The "starting point" in determining the appropriate hourly rate is the attorneys' usual billing rate. *Joan P.B. v. Khepera Charter Sch*., 420 F. Supp. 3d 347, 353 (E.D. Pa. 2019); *Pennsylvania Env't Def. Found. v. Canon-McMillan Sch. Dist*., 152 F.3d 228, 231 (3d Cir. 1998). Critically and most significantly, the rates are reasonable because the rates set forth in this motion are not speculative but rather, they reflect the *actual* rates and amounts paid by counsel's client, Victaulic. As set forth in the Kaplan Declaration, Victaulic's legal counsel in relation to the compensable efforts was primarily provided by Aryeh L. Kaplan, Nina T. Martinez, and Dustin Chase-Woods. Kaplan Decl. at ¶ 19. Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") is a full-service, American Lawyer Top 100 law firm with approximately 700 attorneys in twenty offices around the world, focusing on business, regulatory, and litigation matters. *Id.* at ¶ 18. When setting Pillsbury's hourly rates, the firm considers rates being charged by competitor firms in the market for comparable legal services, attorneys' experience, and potential alternative billing arrangements and discounts. *Id.* As such, Pillsbury's attorneys' billing rates are commensurate with market rates. *Id.* at ¶ 20.

Given the longstanding relationship Victaulic maintains with Pillsbury[5] and other considerations specific to its relationship with Pillsbury, Victaulic has a negotiated discounted rate structure for approved timekeepers across Victaulic's various legal matters. *Id.* at ¶ 21. The rate structure for the relevant period is as follows:

---

[5] Notwithstanding the rate specific to Victaulic, based on the historical relationship it has with Pillsbury and other considerations specific to its relationship with the firm, Mr. Kaplan's standard hourly rate is $1790, Ms. Martinez and Mr. Chase-Woods' hourly rate is $1160, and Mr. Steger's hourly rate is $930. Counsel's rates vary from client to client depending on the needs of the case and the client's relationship with the firm. *Id.* at ¶ 20.

10

| Position | 2022 Negotiated Hourly Rate | 2024 Negotiated Hourly Rate |
|---|---|---|
| Partner | $790.00 | $830.00 |
| Associate | $399.00 - $675.00 | $587.00 - $777.00 |

Accordingly, by virtue of their position and class year, Mr. Kaplan's rate for the relevant period was $790 in 2022 and $830 in 2024 and Ms. Martinez and Mr. Chase-Woods rate was $559 in 2022 and $777 in 2024. *Id.* at ¶ 22. This represents a considerable discount of over 50% on Mr. Kaplan's standard rates in 2022 and a 43% discount in 2024, and a 40% discount in 2022 and 33% discount in 2024 on Ms. Martinez and Mr. Chase-Woods' standard rate. *Id.* These rates are far below the prevailing market rates among peer firms in the San Francisco, New York, and Miami areas where counsel practice. *Id.*

As set forth below and in the Kaplan Declaration, the hourly rates of Victaulic's attorneys fall within the prevailing market rate in the Philadelphia community under this analysis. In *Middlebrooks v. Teva Pharms. USA, Inc*., the court explained:

> A "reasonable hourly rate" is generally calculated according to the prevailing market rates in the relevant community and our starting point is the attorney's usual billing rate . . . . When determining the prevailing market rate, we are directed by our Court of Appeals to assess the experience and skill of the [moving] party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.

No. CV 17-412, 2019 WL 936645, at *10 (E.D. Pa. Feb. 26, 2019) (internal citation and quotations omitted). The Third Circuit typically applies the "forum rate rule" which applies the market rate in which the litigation is brought. *Interfaith*, 426 F.3d at 705.

Survey data establishes that the rates charged by Victaulic's attorneys are in alignment with the customary rates charged by attorneys with comparable years of experience. For example, the Real Rate Report published by CEB, Inc. (Formerly Corporate Executive Board)

and Wolters Kluwer's ELM Solutions ("Real Rate Report") in 2023 provides a Philadelphia-specific snapshot of attorney rates for various practice areas and is based on law firm size:

## Section II: Practice Area Analysis

**Commercial**
By City

| | | | 2023 - Real Rates for Associate and Partner | | | Trend Analysis - Mean | | |
| City | Role | n | First Quartile | Median | Third Quartile | 2023 | 2022 | 2021 |
|------|------|---|---------------|--------|----------------|------|------|------|
| Philadelphia PA | Partner | 112 | $554 | $710 | $861 | $737 | $751 | $684 |
| | Associate | 88 | $383 | $450 | $594 | $499 | $476 | $446 |

## Section IV: In-Depth Analysis for Select US Cities

**Philadelphia PA**
By Practice Area and Firm Size

| | | | | 2023 - Real Rates for Associate and Partner | | | Trend Analysis - Mean | | |
| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2023 | 2022 | 2021 |
|---------------|-----------|------|---|---------------|--------|----------------|------|------|------|
| Commercial | 51-200 Lawyers | Partner | 24 | $481 | $713 | $999 | $707 | $837 | $678 |
| | | Associate | 15 | $334 | $431 | $485 | $416 | $446 | $383 |
| | 201-500 Lawyers | Partner | 45 | $644 | $736 | $841 | $766 | $742 | $652 |
| | | Associate | 42 | $408 | $450 | $549 | $472 | $447 | $366 |
| | 501-1,000 Lawyers | Partner | 20 | $691 | $733 | $854 | $770 | $789 | $742 |
| | More Than 1,000 Lawyers | Partner | 12 | $675 | $864 | $1,455 | $1,032 | $1,083 | $919 |

*See* Ex. B to Kaplan Decl. (2023 Real Rate Report Excerpts) at 88 & 175. The Real Rate Report is recognized by courts in the Third Circuit and beyond as a source for determining prevailing market rates. *See Minehan v. McDowell*, No. CV 21-5314, 2023 WL 199276, at *4 (E.D. Pa. Jan. 17, 2023); *Sabinsa Corp. v. HerbaKraft, Inc.*, No. 14-cv-04738, 2022 WL 17446485, at *4 n.3 (D.N.J. Dec. 6, 2022) (recognizing the Real Rate Report as "generally regarded as the legal industry's leading benchmark for law firm rates and staffing trends based on actual invoice

12

data"); *see, e.g.*, *Eksouzian v. Albanese*, No. CV 13-728 PSG (AJWX), 2015 WL 12765585, at

*3 (C.D. Cal. Oct. 23, 2015) ("[T]he Court finds the 2014 Real Rate Report to be a much better

barometer of the reasonable rates"); *Hicks v. Toys 'R' Us-Delaware, Inc.*, No. CV13-1302-DSF

JCGX, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014) ("The Court finds the 2013 Real Rate

Report . . . that identifies attorney rates by location, experience, firm size, areas of expertise, and

industry, as well as the specific practice areas, to be much more persuasive, as it is based on

actual legal billing, matter information, and paid and processed invoices from more than 80

companies"); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433

(S.D.N.Y. 2012) (considering the Real Rate Report).

     The rates which give rise to the fees Victaulic seeks recovery for directly align with the

prevailing market rates in Philadelphia.  For example, Mr. Kaplan's rate for this matter is just $1

higher than the 2023 Real Rate Report's Mean for partner rates in Philadelphia in 2022.

Similarly, the Ms. Martinez and Mr. Chase-Woods' rates here are aligned with or below the

Third Quartile data for Philadelphia in 2022.[6]

     Moreover, the Third Circuit has held that fee applicants can establish the prevailing

market rate by "submitting affidavits of other attorneys in the relevant legal community attesting

to the range of prevailing rates charged by attorneys with similar skill and experience." *S.D. v.

Manville Bd. of Educ.*, 989 F. Supp. 649, 656 (D.N.J. 1998) (citing *SPIRG v. AT & T Bell

Laboratories*, 842 F.2d 1436, 1450 (3d Cir. 1988)).  To support the billing rates, Victaulic

submits the Declaration of Brian R. Tipton (the "Tipton Declaration") as Exhibit D to the Kaplan

Decl.  Mr. Tipton has over 24 years of experience practicing law in the Philadelphia area. Mr.

---

[6] There is a paucity of data for associates in firms 501-1000 attorneys in the 2023 Real Rate
Report, as such, the market data for associates in Philadelphia is somewhat less precise.

Tipton is the Managing Partner of Florio Perrucci Steinhardt Cappelli & Tipton, LLC and chairs

the firm's litigation group. Mr. Tipton has extensive experience in complex business and

commercial matters.  In light of his professional experience and leadership positions, Mr. Tipton

is generally familiar with prevailing hourly rates of attorneys in the Philadelphia area and has

personal knowledge of the standard hourly rates, in effect in 2022 through the present, of

Members of Florio Perrucci Steinhardt Cappelli & Tipton, LLC with practices focusing on

commercial litigation. As the Tipton Declaration attests, the billing rates of Victaulic's attorneys

are well within the prevailing rates in the Philadelphia community for services by lawyers of

comparable skill, experience, and reputation.

### a.    The Hourly Rate of Aryeh L. Kaplan is Reasonable.

Mr. Kaplan has been practicing law since 2008 as a member of the Florida bar.  Kaplan

Decl. at ¶ 23.  Mr. Kaplan is also admitted to practice in the United States District Courts of the

Southern and Middle District of Florida, as well as the Eleventh Circuit Court of Appeals and the

United States Supreme Court.  *Id.*  Mr. Kaplan is a Partner at Pillsbury and the head of Miami's

Litigation practice.  *Id.*  Prior to joining Pillsbury, Mr. Kaplan was an attorney at Boies Schiller

Flexner LLP litigating complex commercial matters, product liability matters, multi-district

litigation, class action, and *qui tam* matters.  *Id.* at ¶ 24.  Mr. Kaplan began his career as a

prosecutor with the Office of the State Attorney for the 11th Judicial Circuit in Miami, Florida.

*Id.* at ¶ 25.

Mr. Kaplan has represented plaintiffs and defendants in numerous cases in federal and

state courts in Florida and has been admitted *pro hac vice* to represent parties in federal and state

courts in other jurisdictions, including Pennsylvania, New York, Tennessee, and California.  *Id.*

at ¶ 26.  Among other cases, Mr. Kaplan has represented parties in federal court including *In Re*

*General Motors LLC Ignition Switch Litigation*, 2014-MD-02543 (S.D.N.Y.) (in which he co-chaired the trial of product liability multi-district litigation), *Bodiford v. R.J. Reynolds Tobacco Company et al.*, 2009-CV-14189 (M.D. Fla.) (in which he defended a tobacco company in Engle-progeny lawsuits in Florida), and *Schrier v. Qatar Islamic Bank*,2020-CV-60075 (S.D. Fla.), *Przewozman et al. v. Qatar Charity et al.*, (2020-CV-06088) (S.D.N.Y.), *Force et al. v. Qatar Charity et al.*, 2020-CV-02578 (S.D.N.Y.), and *Henkin et al v. Qatar Charity et al.*, 2021-CV-05716 (S.D.N.Y.) (representing banking institutions in ATA and JASTA litigation).  *Id.* at ¶ 27.

Mr. Kaplan's hourly rate for services invoiced and paid by Victaulic was $790 per hour in 2022 and $830 in 2024. *Id.* at ¶ 22.  The hourly rate for Mr. Kaplan is reasonable given his expansive background and years in practice.

### b.    The Hourly Rate of Nina T. Martinez is Reasonable.

Ms. Martinez has been practicing law since 2016 as a member of the New York bar and has been a member of the Florida bar since 2020.  *Id.* at ¶ 29.  Ms. Martinez is also admitted to practice in the United States District Court of the Southern and Middle Districts of Florida and the Southern, Eastern, and Western Districts of New York.  *Id.*  Ms. Martinez is a Senior Associate at Pillsbury and has been an attorney at Pillsbury since 2021.  *Id.* at ¶ 30.  Prior to joining Pillsbury, Ms. Martinez was an attorney at Outten & Golden LLP, where she litigated complex wage and hour and discrimination class action matters. *Id.* at ¶ 31.  Ms. Martinez earned her J.D. from the University of Pennsylvania Law School in 2015.  *Id.* at ¶ 32.

Ms. Martinez has represented plaintiffs and defendants in numerous cases in federal and state courts in Florida and New York and has been admitted *pro hac vice* to represent parties in federal and state courts in other jurisdictions, including the Pennsylvania, Washington,

Massachusetts, California, and Ohio. *Id.* at ¶ 33. Among other cases, Ms. Martinez has represented parties in federal court including *Rodriguez v. The Procter & Gamble Company*, 17-CV-22652-KMW (S.D. Fla.) (in which she litigated a complex first impression discrimination class action under 42 U.S.C. § 1981) and *Millien et al. v. The Madison Square Garden Company et al*, 17-CV-04000-AJN-SLC (S.D.N.Y.) (in which she litigated and successfully obtained attorney's fees of $750,000 for successful settlement of Fair Credit Reporting Act and New York City Human Rights Law claims on behalf of a class of applicants). *Id.*

Ms. Martinez's hourly rate for services invoiced and paid by Victaulic was $559 per hour in 2022 and $777 in 2024. *Id.* at ¶ 22. The hourly rate for Ms. Martinez is reasonable given her background and years in practice.

### c.    The Hourly Rate of Dustin Chase-Woods is Reasonable.

Mr. Chase-Woods has been practicing law since 2017 as a member of the California bar. *Id.* at ¶ 34. Mr. Chase-Woods is also admitted to practice in the United States District Courts for the Northern District of California and the Central District of California. *Id.* Mr. Chase-Woods is a Senior Associate at Pillsbury and has been an attorney at Pillsbury since he was first admitted to practice law in 2017. *Id.* at ¶ 35. Mr. Chase-Woods earned his J.D. from the University of Pennsylvania Law School in 2017 and earned an LL.M. in Arbitration and Dispute Resolution from the University of Hong Kong in 2017. *Id.* at ¶ 36.

Mr. Chase-Woods has represented plaintiffs and defendants in federal court, state court, and arbitration, and has been admitted *pro hac vice* to represent parties in federal and state courts in other jurisdictions, including in Pennsylvania, New York, Illinois, and Oregon. *Id.* at ¶ 37. Among other cases, Mr. Chase-Woods has represented parties in federal cases including *Athletics Investment Group, LLC v. Schnitzer Steel Industries, Inc.*, 3:21-cv-05246 (N.D. Cal.)

(litigating Clean Air Act claims); *UL LLC v. 7111495 Canada Inc. d/b/a Arizer et al.*, 1:20-cv-05308 (N.D. Ill.) (defending trademark infringement claims under the Lanham Act); and *Eduardo I.T., et al. v. United States*, 4:22-cv-05333-DMR (N.D. Cal.) (prosecuting claims under Federal Tort Claims Act on behalf of migrant families). *Id.*

Mr. Chase-Woods' hourly rate for services invoiced and paid by Victaulic was $559 per hour in 2022 and $777 in 2024. *Id.* at ¶ 22. The hourly rate for Mr. Chase-Woods is reasonable given his background and years in practice.

### 2.    The Hours Expended by Counsel are Reasonable

The issues attendant to Mr. Casals and Mr. Duarte's depositions were critical to Victaulic's claims for unjust enrichment, money had and received, and accounting. Kaplan Decl. at ¶ 39. Moreover, the issues raised in Victaulic's Sanctions Motion were the culmination of nearly a year of unsuccessful efforts to obtain discovery and followed the nonappearance of Mr. Casals and the complete failure of Mr. Duarte to prepare for his deposition. *Id.* As such, the time spent in relation to the depositions and the Sanctions Motion is reasonable by the measures applied in this Circuit.

The party requesting attorneys' fees must submit evidence of the hours worked that is "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Washington v. Phila. Cty Court of Common Pleas*, 89 F. 3d 1031, 1037 (3d Cir. 1996). Compensable time pursuant to the Court's Order (Dkt. No. 163 at 8) includes hours expended by Victaulic's attorneys in relation to the Casals and Duarte depositions, the Sanctions Motion, and preparation for the January 23, 2024 hearing, including conducting legal research, attorney discussions, and strategy sessions in support of same. *Shanea S. v. Sch. Dist. of Phila.*, 2014 WL 2586940, at *5 (E.D. Pa. June 10, 2014) (citing *City of Riverside v. Rivera*, 477 U.S.

561, 573, n. 6 (1986)). The Kaplan Declaration sets forth the fees and costs incurred by Victaulic in preparing for Mr. Casals and Mr. Duarte's depositions, drafting the Sanctions Motion, and in preparing for the portion of time attributed to preparation for the oral argument.  Kaplan Decl. at ¶¶ 4-17; Ex. A to Kaplan Decl. (Time Entries).  The time expended and fees are summarized as follows:

| COMPENSABLE EVENT | HOURS | LODESTAR |
|---|---|---|
| Preparation for Casals Deposition | 65.8 | $40,062.40 |
| Preparation for Duarte Deposition | 36.5 | $23,244.80 |
| Researching, Drafting, and Complete Briefing of the Sanctions Motion and Reply in Support of Same | 101.3 | $56,363.20 |
| Preparation for Hearing on Sanctions Motion | 64.2 | $51,070.60 |
| **Total** | **267.8** | **$170,741.00** |

The time expended is well-documented and supported by counsel's contemporaneously-created time records.  Kaplan Decl. at ¶ 40; *see* Ex. A to Kaplan Decl. (Time Entries).  To assist the Court in analyzing the fees sought by Victaulic with respect to the services rendered by Pillsbury in connection with the litigation of this matter, Victaulic has categorized the legal fees by category: 1) fees incurred in preparation for the Casals deposition; 2) fees incurred in preparation for the Duarte deposition, 3) fees incurred in the researching and drafting the Sanctions Motion, 4) and fees incurred in preparation for the January 23, 2024 hearing on Victaulic's Sanctions Motion.  Kaplan Decl. at ¶ 41; *see* Ex. A to Kaplan Decl. (Time Entries). These entries exclude time spent on work performed on any other matter in the litigation not compensable under the Court's order as well as any *de minimus* time spent by other attorneys involved in the litigation in relation to otherwise compensable time.[7]  Kaplan Decl. at ¶ 42.

---

[7] Additionally, although professional time spent drafting and litigating a fee petition is also recoverable as part of a fee award, Victaulic is not seeking reimbursement of fees for time spent in preparing the instant motion. *See Horizon Unlimited, Inc. v. Silva, No*. CIV.A.97-7430, 2002 WL 1896297, at *4 (E.D. Pa. August 15, 2002) (quoting *Planned Parenthood of Cent. New Jersey v. Att'y Gen. of State of New Jersey*, 297 F.3d 253, 268 (3d Cir. 2002)).

More importantly, these time entries reflect time actually charged to and paid by Victaulic.[8]  *Id.*
Because Victaulic pays counsel's hourly rate on a monthly basis (as opposed to serving on a
contingency), counsel was mindful of the time expended contemporaneous of such efforts
because such time had to be reviewed, approved, and paid for by Victaulic.  *Id.*

As set forth above *supra* at 2-4, Victaulic's counsel worked efficiently to avoid accruing
unnecessary fees and waited to begin preparing for the depositions of Mr. Casals and Mr. Duarte
until they were absolutely certain they were going forward (despite having noticed the
depositions months prior).  Kaplan Decl. at ¶ 43.  In other words, despite having noticed these
depositions as early as March and June 2022, given HiTHERM's counsel's continued
nonresponsiveness, counsel exercised caution and deferred preparing for these depositions until
the few weeks leading up to the depositions.  *Id.*  In advance of the depositions counsel
performed routine and customary work in order to prepare, including reviewing documents,
preparing outlines, and conferring with counsel on strategic approach.  Kaplan Decl. at ¶¶ 4-11,
44.  As noted above, HiTHERM served Victaulic with a production constituting nearly 70% of
its prior production less than two weeks before Mr. Casals' deposition, which necessitated a
careful analysis given Mr. Casals' prominent role in HiTHERM's communications. *See supra* at
3 n.2; Kaplan Decl. at ¶ 6.

With regards to its efforts in relation to the Sanctions Motion and preparation for the
hearing regarding same, Victaulic conducted careful research to ensure that moving for
Sanctions, a serious claim, was both proper and legally sound.  *See supra* at 5-6; Kaplan Decl. at
¶ 13.  This necessitated significant research regarding the relevant standard and jurisdictional

---

[8] To the extent the Court requires it, counsel will make available copies of the relevant invoices
to Victaulic for *in camera* review.

precedent and involved a thorough effort to collect all relevant documents and communications, which effort resulted in a motion containing 22 exhibits. *See supra* at 5; Kaplan Decl. at ¶¶ 12-17. The filing necessitated an inquiry into sealing procedures and required access to quick turnaround rough drafts. *See supra* at 5; Kaplan Decl. at ¶ 15. After completely briefing the matter in September 2022, preparation for a hearing in January 2024 necessitated extensive efforts to revisit the materials, including the arguments, factual allegations, and relevant case law. *See supra* at 6; Kaplan Decl. at ¶¶ 16-17. Such efforts culminated in the production of a robust demonstrative and thorough presentation by Mr. Kaplan. *See supra* at 6; Kaplan Decl. at ¶ 17.

Accordingly, the efforts discussed above demonstrate the reasonableness of the time spent by counsel in preparing for the depositions, drafting the Sanctions Motion and preparing for a hearing on same.

### C.    The Costs of $3,531.35 Expended are Reasonable

The costs expended are itemized in the invoices attached as composite Exhibit C and set forth herein. These costs were invoiced to counsel and subsequently paid for by Victaulic. Kaplan Decl. at ¶ 45; Ex. C to Kaplan Decl. ("Invoices"). The costs incurred by Victaulic in relation to Defendants' sanctionable conduct total $3,531.35. Kaplan Decl. at ¶ 45; Ex. C to Kaplan Decl. ("Invoices"). The compensable costs include the court reporter and transcript costs for Mr. Casals and Mr. Duarte's depositions such as the costs for a videographer, remote set up, and a rush rough draft order of Mr. Duarte's transcript.[9] Kaplan Decl. at ¶ 46; Ex. C to Kaplan Decl. (Invoices).

---

[9] Victaulic is not seeking costs for its repeated efforts to serve Mr. Duarte, the shipping of documents related to Mr. Casals and Mr. Duarte's depositions, nor reimbursement for meals and

The following is a summary of the costs incurred:

| Description | Cost |
|---|---|
| Casals Nonappearance Transcript | $ 953.20 |
| Duarte Deposition Transcript and Rough Draft | $ 2,578.15 |
| **Total** | **$ 3,531.35** |

These costs are reasonable given Defendants' ongoing nonresponsiveness as well as the ongoing discovery misconduct that necessitated speedy access to Mr. Duarte's transcript in order to draft Victaulic's time sensitive Sanctions Motion. *Id.* at ¶¶ 14, 48.  The costs are reasonable because they were incurred subject to Victaulic's approval and subsequently paid for by Victaulic soon after such expenses were incurred. *Id.* at ¶ 45.

## IV.  **CONCLUSION**

For the reasons set forth above, Victaulic respectfully requests that this Court grant this Motion for Attorney's Fees seeking an award totaling $174,272.35, comprised of an award of $170,741.00 in attorney's fees and $3,531.35 in costs, to be paid to Victaulic within thirty days of the entry of an order in the form set forth in the [Proposed] Order filed herewith.

---

lodging in relation to the additional time Victaulic's attorneys spent in Los Angeles for Mr. Casals and Mr. Duarte's depositions because it is confining its request to immutably justifiable expenses.  Kaplan Decl. at ¶ 46.  However, reimbursement of such costs are routinely granted. *See, e.g.*, *Marthers v. Gonzales*, No. 05-CV-03778, 2008 WL 3539961, at *4 (E.D. Pa. Aug. 13, 2008) See also *Kratzer v. Wegman's Restaurant, LLP*, 2005 WL 2847320, at *2-3 (E.D. Pa. Oct. 27, 2005) (awarding litigation expenses, including travel expenses); *Rush v. Scott Specialty Gases, Inc*., 934 F. Supp. 152, 157 (E.D. Pa. 1996) (awarding travel and lodging expenses).

Dated: April 26, 2024                    Respectfully submitted,

                                         PILLSBURY WINTHROP SHAW PITTMAN
                                         LLP
                               By:
                                         */s/ Aryeh L. Kaplan*
                                         Aryeh L. Kaplan
                                         Nina T. Martinez
                                         600 Brickell Avenue, Suite 3100
                                         Miami, FL 33131
                                         *Admitted pro hac vice*

                                         Colin T. Kemp
                                         Dustin Chase-Woods
                                         Four Embarcadero Center, 22nd Floor
                                         San Francisco, CA 94111
                                         *Admitted pro hac vice*

                                         FLORIO PERRUCCI STEINHARDT
                                         CAPPELLI & TIPTON LLC
                                         Brian R. Tipton
                                         Attorney ID: 84457
                                         235 Broubalow Way
                                         Phillipsburg, NJ 08865

                                         ***Attorneys for Plaintiff/Counter-Defendant
                                         Victaulic Company and Counter-
                                         Defendant Jeffrey Webster***