### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTAULIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>HITHERM, LLC, a California corporation; and ANIQ SUFI, an individual;<br><br>Defendants.<br><br>HITHERM, LLC, a California corporation,<br><br>Defendant/Counter-Claimant,<br><br>v.<br><br>VICTAULIC COMPANY, and JEFFREY WEBSTER, an individual,<br><br>Plaintiff/Counter-Defendants. | CIVIL ACTION NO.: 5:21-cv-05077-JLS<br><br>**DECLARATION OF ARYEH L. KAPLAN IN SUPPORT OF PLAINTIFF AND COUNTER-DEFENDANT VICTAULIC'S MOTION FOR ATTORNEY'S FEES** |

I, ARYEH L. KAPLAN, declare as follows:

1. I am a member of the Florida Bar and have been admitted to this Court *pro hac vice*. I am a member of Pillsbury Winthrop Shaw Pittman LLP, counsel to Victaulic Company ("Victaulic") and Jeffrey Webster ("Webster") in the above-captioned matter.

2. I submit this declaration in support of Victaulic's Motion for Attorney's Fees submitted pursuant to the Court's March 28, 2024 Opinion (Dkt. No. 163) ("Opinion") and Order (Dkt. No. 164) ("Order") granting in part Victaulic's Motion for Sanctions ("Sanctions Motion") (Dkt. Nos. 95 & 96) and ordering reasonable expenses, including attorney's fees, caused by the failure of Eduardo Casals ("Mr. Casals") and Carl Duarte ("Mr. Duarte") to appear for their depositions, such expenses and fees to include those incurred by Victaulic to litigate the

Sanctions Motion and participate in the portion of the January 23, 2024 oral argument regarding same

3.   Unless otherwise stated, the statements in this declaration are based on my personal knowledge. If called as a witness to testify, I could and would testify as set forth herein.

I.   **Factual and Procedural Background**

*Preparation for Mr. Casals Deposition*

4.   As soon as Victaulic's counsel was assured that the deposition of Mr. Casals would proceed on August 23, 2022, it began preparing for same.

5.   In advance of Mr. Casals' deposition, Victaulic's counsel reviewed HiTHERM's production for all documents to or from Mr. Casals that related to Victaulic's unjust enrichment, money had and received, and accounting claims.

6.   On August 12, 2022, in response to Victaulic's August 5, 2022 outreach concerning HiTHERM's deficient production, HiTHERM made a very large and late document production, a little over a week before Mr. Casals' scheduled deposition. For context, on or around June 29, 2022 HiTHERM produced 3,271 documents totaling 9,984 pages. On August 12, 2022, HiTHERM produced nearly 70% of its prior production, 2,310 documents totaling 8,082 pages.

7.   This caused Victaulic's counsel to devote extensive time and resources to such review in order to identify and analyze all documents relevant to Mr. Casals' deposition were in fact incorporated into the materials intended for use at Mr. Casals' deposition. *See* Ex. A ("Time Entries") (reflecting contemporaneous time entries for review of new production).

8.   Mr. Casals was featured prominently in HiTHERM's document production

2

because he was HiTHERM's sole in-house accountant and bookkeeper. In fact, of HiTHERM's production of 5,582 documents, Mr. Casals was the sender or recipient of approximately 1,787 documents (spanning over 4,500 pages of correspondence).

9. In addition to gathering and cataloguing the relevant documents for use as exhibits in Mr. Casals' deposition, in advance of Mr. Casals' deposition counsel drafted an extensive deposition outline, conducted research regarding Mr. Casals' background, investigated the local rules regarding deposition conduct, and coordinated the logistics around Mr. Casals' appearance.

*Preparation for Mr. Duarte's Deposition*

10. Having finally solidified the date of Mr. Duarte's deposition for August 24, 2022, counsel for Victaulic began analyzing documents in HiTHERM's production that touched on the topics noticed for Mr. Duarte's deposition, drafted an extensive deposition outline, conducted research regarding Mr. Duarte's background, investigated the local rules regarding deposition conduct, and coordinated the logistics around Mr. Duarte's appearance. *See* Ex. A (Time Entries) (contemporaneous time entries reflecting work performed in preparation for Duarte deposition).

11. Mr. Duarte appeared at his deposition and was utterly unprepared by counsel thus depriving Victaulic of any meaningful deposition testimony. *See* Order at 7.

*The Researching, Drafting, and Complete Briefing of Victaulic's Sanctions Motion and Reply in Support of Same and Preparation for the January 23, 2024 Hearing*

12. Given the impending close of fact discovery and the urgency of the request, the team involved Dustin Chase-Woods, another associate at Pillsbury (and to a lesser extent, a junior associate, John Steger), to draft the Sanctions Motion so that Ms. Martinez and I could continue to prepare for the imminent deposition of HiTHERM's Rule 30(b)(6) witness, as well

3

as the defense of Victaulic's witnesses, and to attend to ongoing discovery issues.

13. Because of the gravity and implications of a request for sanctions, counsel conducted extensive research into the propriety of the motion, the relevant standard, and the jurisdictional precedent as part of the drafting process.

14. Thereafter, counsel expended significant efforts in order to gather the relevant communications with opposing counsel which would demonstrate Victaulic's ongoing efforts to resolve discovery issues and HiTHERM's persistent non-responsiveness and unwillingness to confer. These communications informed the relevant background for the motion which counsel set forth in painstaking detail (*see* Sanctions Motion at 1-6, 12-15 & 17-18) and resulted in the identification of approximately 22 relevant communications for submission as exhibits. *See* Dkt. Nos. 95-2-24. Additionally, Victaulic was also forced to obtain quick turnaround rough drafts of the deposition transcripts in order to extract the relevant statements to support its arguments in the Sanctions Motion. *See* Sanctions Motion at 14-15.

15. Moreover, in preparing the filing, counsel determined that raising certain issues called for attention to trade secret sensitivities and an analysis of Victaulic's ability to redact and file under seal. Counsel does not take such a filing lightly and thus, the motion was reviewed and further revised by myself and Ms. Martinez in anticipation of its filing on September 12, 2022. *See* Dkt. Nos. 95 & 96. HiTHERM filed a response in opposition on September 29, 2022 (Dkt. Nos. 104 & 105) for which Victaulic submitted a reply on October 6, 2022. Dkt. No. 107.

16. On January 11, 2024, the Court ordered the parties to appear in Reading, Pennsylvania for oral argument on Victaulic's Sanctions Motion (as well as the parties' motions for summary judgment and Victaulic's motion to strike the declarations of Aniq Sufi). Dkt. No. 153.

17. In the period leading up to the hearing, counsel reacquainted itself with the arguments and issues raised in the Sanctions Motion, analyzed the relevant case law, outlined the ongoing and recent discovery abuses that have reinvigorated the significance of the issues raised in the Sanctions Motion, and considered the interplay of the issues raised in the Sanctions Motion with the parties' motions for summary judgment. Because Mr. Chase-Woods had taken the lead in drafting the Sanctions Motion, he provided myself and Ms. Martinez with support in preparing for the hearing on that topic, including the creation of the demonstrative presented at the hearing. Accordingly, I studied the materials prepared by Mr. Chase-Woods and Ms. Martinez in advance of the hearing, such preparation included reviewing and analyzing the filings and studying the case law cited by Victaulic. I argued Victaulic's Sanctions Motion on January 23, 2024 in person, which spanned approximately two hours.

## II.     Attorney Background and Experience

*Pillsbury's Rates and Background*

18. Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") is a full-service, American Lawyer Top 100 law firm with approximately 700 attorneys in twenty offices around the world, focusing on business, regulatory, and litigation matters.

19. Victaulic's legal counsel in relation to the compensable efforts was primarily provided by myself, and Senior Associates, Nina Martinez, and Dustin Chase-Woods. My standard hourly rate is $1790, Ms. Martinez and Mr. Chase-Woods' hourly rate is $1160, and Mr. Steger's hourly rate is $930.

20. When setting Pillsbury's hourly rates, the firm considers rates being charged by competitor firms in the market for comparable legal services, attorneys' experience, and potential alternative billing arrangements and discounts. Counsel's rates vary from client to client

depending on the needs of the case and the client's relationship with the firm.  As such, Pillsbury's attorneys' billing rates are commensurate with market rates.

21. Given the longstanding relationship Victaulic maintains with Pillsbury and other considerations specific to its relationship with Pillsbury, Victaulic has a negotiated discounted rate structure for approved timekeepers across Victaulic's various legal matters.  The rate structure for the relevant period is as follows:

| Position | 2022 Negotiated Hourly Rate | 2024 Negotiated Hourly Rate |
|---|---|---|
| Partner | $790.00 | $830.00 |
| Associate | $399.00 - $675.00 | $587.00 - $777.00 |

22. By virtue of my position, my rate for the relevant period was $790 in 2022 and $830 in 2024.  Ms. Martinez and Mr. Chase-Woods' rate was $559 in 2022 and $777 in 2024 based on their class year.  This represents a considerable discount of over 50% on my standard rates in 2022 and a 43% discount in 2024, and a 40% discount in 2022 and 33% discount in 2024 on Ms. Martinez and Mr. Chase-Woods' standard rate.  These rates are far below the prevailing market rates among peer firms in the San Francisco, New York, and Miami areas where counsel practice.

***Background and Experience of Victaulic Counsel***

23. I am a Partner at Pillsbury and the head of Miami's Litigation practice.  I have been practicing law since 2008 as a member of the Florida bar.  I am also admitted to practice in the United States District Courts of the Southern and Middle District of Florida, as well as the Eleventh Circuit Court of Appeals and the United States Supreme Court.

24. Prior to joining Pillsbury, I was an attorney at Boies Schiller Flexner LLP litigating complex commercial matters, product liability matters, multi-district litigation, class action, and *qui tam* matters.

25. I began my career as a prosecutor with the Office of the State Attorney for the 11th Judicial Circuit in Miami, Florida.

26. I have represented plaintiffs and defendants in numerous cases in federal and state courts in Florida and has been admitted *pro hac vice* to represent parties in federal and state courts in other jurisdictions, including Pennsylvania, New York, Tennessee, and California.

27. Among other cases, I have represented parties in federal court including *In Re General Motors LLC Ignition Switch Litigation*, 2014-MD-02543 (S.D.N.Y.) (in which I co-chaired the trial of product liability multi-district litigation), *Bodiford v. R.J. Reynolds Tobacco Company et al.*, 2009-CV-14189 (M.D. Fla.) (in which I defended a tobacco company in Engle-progeny lawsuits in Florida), and *Schrier v. Qatar Islamic Bank* ,2020-CV-60075 (S.D. Fla.), *Przewozman et al. v. Qatar Charity et al.*, (2020-CV-06088) (S.D.N.Y.), *Force et al. v. Qatar Charity et al.*, 2020-CV-02578 (S.D.N.Y.), and *Henkin et al v. Qatar Charity et al.*, 2021-CV-05716 (S.D.N.Y.) (representing banking institutions in ATA and JASTA litigation).

28. Brief backgrounds for the attorneys who worked on this matter are set forth below:

*Nina Martinez*

29. Ms. Martinez has been practicing law since 2016 as a member of the New York bar and has been a member of the Florida bar since 2020. Ms. Martinez is also admitted to practice in the United States District Court of the Southern and Middle Districts of Florida and the Southern, Eastern, and Western Districts of New York.

30. Ms. Martinez is a Senior Associate at Pillsbury and has been an attorney at Pillsbury since 2021.

31. Prior to joining Pillsbury, Ms. Martinez was an attorney at Outten & Golden LLP,

where she litigated complex wage and hour and discrimination class action matters.

32. Ms. Martinez earned her J.D. from the University of Pennsylvania Law School in 2015.

33. Ms. Martinez has represented plaintiffs and defendants in numerous cases in federal and state courts in Florida and New York and has been admitted *pro hac vice* to represent parties in federal and state courts in other jurisdictions, including the Pennsylvania, Washington, Massachusetts, California, and Ohio.  Among other cases, Ms. Martinez has represented parties in federal court including *Rodriguez v. The Procter & Gamble Company*, 17-CV-22652-KMW (S.D. Fla.) (in which she litigated a complex first impression discrimination class action under 42 U.S.C. § 1981) and *Millien et al. v. The Madison Square Garden Company et al*, 17-CV-04000-AJN-SLC (S.D.N.Y.) (in which she litigated and successfully obtained attorney's fees of $750,000 for successful settlement of Fair Credit Reporting Act and New York City Human Rights Law claims on behalf of a class of applicants).

### *Dustin Chase-Woods*

34. Mr. Chase-Woods has been practicing law since 2017 as a member of the California bar.  Mr. Chase-Woods is also admitted to practice in the United States District Courts for the Northern District of California and the Central District of California.

35. Mr. Chase-Woods is a Senior Associate at Pillsbury and has been an attorney at Pillsbury since he was first admitted to practice law in 2017.

36. Mr. Chase-Woods earned his J.D. from the University of Pennsylvania Law School in 2017 and earned an LL.M. in Arbitration and Dispute Resolution from the University of Hong Kong in 2017.

37. Mr. Chase-Woods has represented plaintiffs and defendants in federal court, state

court, and arbitration, and has been admitted *pro hac vice* to represent parties in federal and state courts in other jurisdictions, including in Pennsylvania, New York, Illinois, and Oregon. Among other cases, Mr. Chase-Woods has represented parties in federal cases including *Athletics Investment Group, LLC v. Schnitzer Steel Industries, Inc.*, 3:21-cv-05246 (N.D. Cal.) (litigating Clean Air Act claims); *UL LLC v. 7111495 Canada Inc. d/b/a Arizer et al.*, 1:20-cv-05308 (N.D. Ill.) (defending trademark infringement claims under the Lanham Act); and *Eduardo I.T., et al. v. United States*, 4:22-cv-05333-DMR (N.D. Cal.) (prosecuting claims under Federal Tort Claims Act on behalf of migrant families).

38. Further information regarding the education and experience of the attorneys who performed services in this matter is available on Pillsbury's website at http://www.pillsburylaw.com/. If the Court has any questions about rates or experience, I am prepared to address them if needed.

### III. Attorney's Fees and Costs

*Time Expended and Counsel's Contemporaneous Time Records*

39. The issues attendant to Mr. Casals and Mr. Duarte's depositions were critical to Victaulic's claims for unjust enrichment, money had and received, and accounting. Moreover, the issues raised in Victaulic's Sanctions Motion were the culmination of nearly a year of unsuccessful efforts to obtain discovery and followed the nonappearance of Mr. Casals and the complete failure of Mr. Duarte to prepare for his deposition. The time expended and fees are summarized as follows:

| COMPENSABLE EVENT | HOURS | LODESTAR |
|---|---|---|
| Preparation for Casals Deposition | 65.8 | $40,062.40 |
| Preparation for Duarte Deposition | 36.5 | $23,244.80 |
| Researching, Drafting, and Complete Briefing of the Sanctions Motion and Reply in Support of Same | 101.3 | $56,363.20 |
| Preparation for Hearing on Sanctions Motion | 64.2 | $51,070.60 |
| **Total** | **267.8** | **$170,741.00** |

40. The time expended is well-documented and supported by counsel's contemporaneously-created time records. *See* Ex. A (Time Entries).

41. To assist the Court in analyzing the fees sought by Victaulic with respect to the services rendered by Pillsbury in connection with the litigation of this matter, Victaulic has categorized the legal fees by category: 1) fees incurred in preparation for the Casals deposition; 2) fees incurred in preparation for the Duarte deposition, 3) fees incurred in the researching and drafting the Sanctions Motion, 4) and fees incurred in preparation for the January 23, 2024 hearing on Victaulic's Sanctions Motion.

42. These entries exclude time spent on work performed on any other matter in the litigation not compensable under the Court's order as well as any *de minimus* time spent by other attorneys involved in the litigation in relation to otherwise compensable time. More importantly, these time entries reflect time actually charged to and paid by Victaulic. Because Victaulic pays counsel's hourly rate on a monthly basis (as opposed to serving on a contingency), counsel was mindful of the time expended contemporaneous of such efforts because such time had to be reviewed, approved, and paid for by Victaulic.

43. Counsel worked efficiently to avoid accruing unnecessary fees and waited to begin preparing for the depositions of Mr. Casals and Mr. Duarte until they were absolutely certain they were going forward (despite having noticed the depositions months prior). In other words, despite having noticed these depositions as early as March and June 2022, given

HiTHERM's counsel's continued nonresponsiveness, counsel exercised caution and deferred preparing for these depositions until the few weeks leading up to the depositions.

44. In advance of the depositions counsel performed routine and customary work in order to prepare, including reviewing documents, preparing outlines, and conferring with counsel on strategic approach.

*Costs Expended*

45. The costs expended are itemized in the invoices attached as composite Exhibit C ("Invoices"). These costs were invoiced to counsel and subsequently paid for by Victaulic soon after such expenses were incurred. The costs incurred by Victaulic in relation to Defendants' sanctionable conduct total $3,531.35.

46. The compensable costs include the court reporter and transcript costs for Mr. Casals and Mr. Duarte's depositions such as the costs for a videographer, remote set up, and a rush rough draft order of Mr. Duarte's transcript. Victaulic is not seeking costs for its repeated efforts to serve Mr. Duarte, the shipping of documents related to Mr. Casals and Mr. Duarte's depositions, nor reimbursement for meals and lodging in relation to the additional time Victaulic's attorneys spent in Los Angeles for Mr. Casals and Mr. Duarte's depositions because it is confining its request to immutably justifiable expenses.

47. The following is a summary of the costs incurred:

| Description | Cost |
|---|---|
| Casals Nonappearance Transcript | $ 953.20 |
| Duarte Deposition Transcript and Rough Draft | $ 2,578.15 |
| **Total** | **$ 3,531.35** |

48. These costs are reasonable given Defendants' ongoing nonresponsiveness as well as the ongoing discovery misconduct that necessitated speedy access to Mr. Duarte's transcript in order to draft Victaulic's time sensitive Sanctions Motion.

11

### IV.     Exhibits

49.     Attached as composite **Exhibit A** is a true and correct copy of the contemporaneous time entries prepared by counsel pertaining to the preparation for Mr. Casals and Mr. Duarte's depositions and the drafting and arguing of the Sanctions Motion ("Time Entries").

50.     Attached as **Exhibit B** is a true and correct copy of excerpts of the Real Rate Report published by CEB, Inc. (Formerly Corporate Executive Board) and Wolters Kluwer's ELM Solutions in 2023 ("2023 Real Rate Report Excerpts").

51.     Attached as composite **Exhibit C** are true and correct copies of invoice numbers 2092225.1, 2092834, 2092835, and 2092841 from TSG Reporting for costs incurred in relation to the depositions of Mr. Casals and Mr. Duarte ("Invoices").

52.     Attached as **Exhibit D** is a true and correct copy of the declaration of Brian R. Tipton (the "Tipton Declaration").

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 26, 2024

                                                  /s/ *Aryeh L. Kaplan*
                                                 ARYEH L. KAPLAN