IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTAULIC COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>HITHERM, LLC, *et al*.,<br><br>*Defendants*,<br><br>HITHERM, LLC,<br><br>*Counterclaimant*,<br><br>v.<br><br>VICTAULIC COMPANY, *et al.*,<br><br>*Counter-Defendants*. | CIVIL ACTION<br>NO. 21-5077 |

**MEMORANDUM OPINION**

**SCHMEHL, J.** */s/ JLS*                                                                                                 **DECEMBER 9, 2024**

This case arises from a product-development agreement and potential acquisition between parties whose relationship soured, leading to disputes about the ownership of intellectual property, funds advanced by Plaintiff Victaulic Company, and Victaulic's obligation to purchase Defendant HiTHERM, LLC's assets, among other matters. After this Court sanctioned Defendants for failing to appear at one deposition, and for inadequately preparing a deponent for another, both Victaulic and Counter-Defendant Jeffery Webster now move for additional sanctions, alleging that new discovery violations have surfaced. For the reasons set forth below, the Court concludes that

HiTHERM, LLC violated its obligation to supplement discovery under Federal Rule of Civil Procedure 26(e).  As a sanction, the Court strikes HiTHERM's counterclaims.

I

A

The allegations underlying this action are as follows: Victaulic, a company specializing in pipe-joining and fire-protection technologies, began collaborating in 2015 with HiTHERM, an insulation-materials manufacturer, to develop insulation solutions for its pipe products.  The parties formalized their relationship through multiple agreements, including a Master Joint Development Agreement.  As the relationship matured, HiTHERM began to show signs of financial instability and expressed an interest in selling its assets.  Seeing synergy, Victaulic began a due-diligence investigation and provided HiTHERM with approximately $1.5 million to help settle debts and cover various expenses in the meantime.

Ultimately, the sale snagged when Victaulic uncovered various red flags, including safety violations and improper accounting and business practices.  The parties failed to negotiate around these issues, leading to litigation and ending the collaborative relationship.  Through this action, Victaulic now claims ownership of certain intellectual property and seeks to recover the monies advanced.  HiTHERM, in turn, counterclaims that it owns the intellectual property, that Victaulic misappropriated the intellectual property, that Victaulic committed various fraudulent acts in connection with the sale, and that Victaulic breached a contract to buy HiTHERM's assets.  At this point, the parties have concluded fact and expert discovery and have undergone a significant motions practice.  The trial will be scheduled for early next year.

B

This is not the first time that the Court has sanctioned HiTHERM. During discovery, Victaulic sought sanctions for various violations, including for failing to produce certain documents, cancelling the deposition of HiTHERM employee Eduardo Casals, and for inadequately preparing HiTHERM accountant Carl Duarte for his deposition. In this Court's previous ruling, *Victaulic Co. v. HiTHERM, LLC*, No. 21-5077, 2024 WL 1364258, at *4-5 (E.D. Pa. Mar. 28, 2024), the Court found that the Defendants did not comply with the Court's orders regarding depositions, which warranted partial sanctions, including: (1) an adverse-inference instruction on the topics noticed for the unperformed deposition of Casals, (2) preventing Casals from testifying on those topics, (3) barring Defendants from contradicting Duarte's limited deposition testimony, and (4) requiring Defendants to pay Victaulic's reasonable expenses incurred in connection with these failures.

It is the latter part of that ruling—the assessment of attorney's fees—that has spawned this request for additional sanctions. More specifically, in accordance with the Court's order, on April 26, 2024, Victaulic filed its motion for attorney's fees. HiTHERM challenged that request and included an affidavit from Defendant Anqi Sufi—the president, CEO, and part owner of HiTHERM, LLC—claiming that such an award would impose "significant hardships" because HiTHERM ceased doing business in 2021. Attached to that affidavit was HiTHERM's 2023 federal tax return, which, for the first time, revealed liabilities to a previously unheard-of entity named "HiTHERM North America." *See* Decl. of Aniq Sufi Ex. A, ECF No. 171-1.

This revelation alarmed Victaulic since it directly contradicted Defendant Sufi's earlier sworn testimony that HiTHERM was still in business. Victaulic researched HiTHERM North America and learned that "HiTHERM North America, LLC" was formed on March 9, 2022,

exactly one month after the Court entered an injunction prohibiting the sale of "information which one party contends, and the other disputes, is Jointly Developed IP," pending the outcome of this litigation. *See generally* J. Stip & Prelim. Inj. Order at 2, ECF No. 51. Victaulic eventually found evidence that HiTHERM North America now operates a website that virtually mirrors HiTHERM, LLC's website, and which appears to market products extremely similar to those sold by HiTHERM, LLC.

It is against this backdrop that Victaulic and Counter-Defendant Webster now move for dispositive sanctions. They reason that evidence surrounding the existence of HiTHERM North America should have been shared with Victaulic and Webster under Rule 26's disclosure requirements or produced in response to various discovery requests. The Defendants' response contends that they were under no such disclosure or production obligation and, even if they were so obligated, their failure should be excused. Shockingly, as part of this response, the Defendants attached another never-before-seen document, an "Amended and Restated Asset Purchase Agreement," which reveals that Defendant Sufi transferred substantially all of HiTHERM, LLC's assets to HiTHERM, North America nearly two years ago.

II

A

The Federal Rules of Civil Procedure seek to prevent trial by ambush. Early in every case, litigants must identify:

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

4

Fed. R. Civ. P. 26(a)(1)(A)(iii). Litigants bear a duty to supplement this disclosure throughout the lifecycle of a case. Indeed, subsection (e) of Rule 26 provides:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e)(1).

In this case, it is HiTHERM who has claimed that Victaulic's failure to consummate the purchase of its assets that has resulted in ongoing damages to its business. Yet by selling its assets to a third party, HiTHERM effectively mitigated its damages—rendering, in a material respect, any previous damages computation "incomplete" and "incorrect" within the meaning of Rule 26(e). HiTHERM thus bore a duty to disclose this sale to the Counter-Defendants under Rule 26(e). HiTHERM clearly failed to comply. This failure was not objectively reasonable, and no substantial justification provides an excuse. So, this Court must craft an appropriate sanction under this factual scenario.

B

If a litigant fails to abide by their disclosure obligations, the Federal Rules of Civil Procedure empower a judge to impose sanctions. Under Rule 37, any party or person who seeks to evade or thwart full and candid discovery incurs the risk of serious consequences, which may include imprisonment for contempt of court, an order that designated facts be taken to be established, an order refusing the delinquent party the right to support or oppose designated claims or defenses, striking out pleadings or parts of pleadings, rendering judgment by default, dismissal of the action or a claim therein, or assessment of expenses and attorney's fees.

Here, Victaulic asks the Court to impose case-dispositive sanctions.  In assessing whether such sanctions are appropriate, the Court must weigh the following factors:

(1)     the extent of the party's personal responsibility;

(2)     the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;

(3)     a history of dilatoriness;

(4)     whether the conduct of the party or the attorney was willful or in bad faith;

(5)     the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and

(6)     the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir.1984).

After carefully reviewing the parties' memoranda, and after holding oral argument, the Court concludes that the *Poulis* factors weigh heavily in favor of striking HiTHERM's counterclaims.  HiTHERM bears significant personal responsibility for failing to disclose this information to the Counter-Defendants.  Sufi himself, the president and CEO of HiTHERM, LLC, signed the asset purchase agreement, and Sufi now owns a minority stake in the affiliated entity, HiTHERM North America, LLC.  And despite possessing this information for over a year, HiTHERM choose to disclose this information only when it was expedient, in response to a request for attorney's fees, and in an oblique way, well after discovery ended.

This non-disclosure amounts to HiTHERM's third strike—its third confirmed discovery violation.  The fact that the Defendants knew about this information for over a year leads the Court to the common-sense conclusion that this was a willful, self-serving non-disclosure.  The Court remains puzzled as to when the Defendants were planning on forthrightly informing the Court about the asset sale.   Moreover, the non-disclosure of HiTHERM North America, LLC, and the related asset sale, greatly prejudiced the Counter-Defendants' ability to investigate HiTHERM,

6

LLC's asserted damages, pull any threads that may naturally arise, and mount a successful defense to the counterclaims at trial.

The Court has previously imposed lesser, evidence-related sanctions against HiTHERM, but these measures were clearly ineffective. Another monetary sanction will not address the significant disadvantage that the Counter-Defendants now face with trial set to begin in just a few months. And since this information supports the Counter-Defendants' defenses, rather than HiTHERM's case-in-chief, an evidence-preclusion sanction simply will not return the parties to parity. Although the counterclaims have merit—insofar as they have survived summary judgment—the Court concludes that striking the counterclaims is the most appropriate sanction that the Court should impose.

III

In conclusion, after carefully weighing the *Poulis* factors, the Court finds that the non-disclosure of the sale of substantially all of HiTHERM, LLC's assets to a third party significantly prejudiced the Counter-Defendants' ability to fairly litigate this matter and has hindered their defense to the counterclaims at trial. Since this revelation occurred after fact and expert discovery has been completed, as well as after the deadline for dispositive motions, and in light of other previously sanctionable discovery misconduct, the Court concludes that the least drastic remedy to restore fairness to this litigation and to uphold the integrity of the judicial process is to strike HiTHERM's counterclaims. An appropriate order follows.